EXHIBIT "F"

# SECURITY AGREEMENT

AGREEMENT, executed this 31st day of July, 2013 by and BRUCKNER BEVERAGE INC., doing business at 22 Stony Hollow, Chappaqua, New York 10514 ("Debtor"), and BUHRE BEVERAGE DIST, INC., a New York corporation having its principal offices at 145 Georgetown Road, Weston, Connecticut 06883 ("Secured Party").

WHEREAS, by the Promissory Note executed by Debtor this 31st day of July, 2013, Debtor is obligated to pay to Secured Party the sum of NINE HUNDRED THOUSAND ($900,000.00) DOLLARS (the "Note"); and

WHEREAS, in order to induce Secured Party to accept the Note, Debtor pledges to the Secured Party, certain property as security for the loan, to wit: a Pepsi-Cola Distribution Route identified in annexed Exhibit 1; and

WHEREAS, the Secured Party would not have agreed to accept the Note, without Debtor's execution of this purchase money Security Agreement; and

WHEREAS, this Security Agreement shall also secure performance of any other obligation of the Debtor to the Secured Party, whether direct or indirect, absolute or contingent, due or to become due, now existing or arising hereunder, including all future loans, advances, or conveyances made at the option of the Secured Party to the Debtor.

NOW, THEREFORE, in consideration thereof, the parties hereto agree as follows:

**1.00 Definitions**. The following terms as used in this Agreement shall have the meanings set forth below:

1.01   "Collateral" is defined as the shares of BUHRE BEVERAGE DISTRIBUTOR, INC., and the Pepsi-Cola Distributor territory described in Exhibit A attached hereto ("the Territory"), accounts receivable, and equipment pertaining to the Territory.

1.02 "Obligations" of the Debtor secured by this Agreement is defined as:

(a) Payment or performance of the terms and conditions of the Note, and all existing and future agreements, debts, and liabilities, whether direct or indirect, absolute or contingent, of the Debtor to the Secured Party, including but not limited to those arising under this Security Agreement; and

(b) Payment of the expenses, including attorney's fees and legal expenses incurred or paid by the Security Party in pursuing, searching for, assembling and preservation of the collateral, and enforcement of the rights or obligations of the Debtor hereunder, including the expenses incurred by the Secured Party in performing on behalf of the Debtor, any of the Obligations of the Debtor.

1.03 "Security Interest" is defined as the right, title, and interest which the Debtor conveys to the Secured Party in and to the Collateral. The Security Interest entitles the Secured Party to the full and prompt payment and performance of the Obligations,

1.04 "Default" is defined as the occurrence of any one or more of the following events:

(a) Debtor fails to pay, perform or observe any covenant, agreement, term or provision of this Agreement, the Note, or any other agreement now or hereafter entered into between the parties hereto, or with respect to any Obligation of Debtor to Secured Party; or

(b) Debtor had made or makes false or misleading representations, warranties or other statements to the Secured Party, relating to the provisions of this Agreement or the Note; or

(c) Debtor admits in writing to its inability to pay its debts generally as they become due; file a petition for relief under the bankruptcy laws or a petition to take advantage of any insolvency act; make an assignment for the benefit of creditors; commence a proceeding for the appointment of a receiver, trustee, liquidator or conservator of itself or the whole or any substantial party of its property; file a petition or answer seeking reorganization or arrangement or similar relief under the Federal Bankruptcy Laws or any other applicable law or statute of the United States or any State; or if Debtor shall be adjudged a bankrupt or insolvent, or a court of competent jurisdiction shall enter any order, judgment or decree appointing a receiver, trustee, liquidator or conservator of Debtor or of the whole or any substantial part of property of Debtor or approve a petition filed against Debtor seeking reorganization or similar relief under the Federal Bankruptcy Laws or any other applicable law or statue of the United States or any State; or

(d) Under the provisions of any other law for the relief or aid of debtors, a court of competent jurisdiction shall assume custody or control of Debtor, the Collateral or the whole or any substantial part of Debtor's property; or

(e) If any of the foregoing proceedings are commenced against Debtor, or, Debtor indicates its consent to, approval of, or acquiescence in any such proceeding or position; or

3

(f) If any creditor of Debtor for any reason whatsoever hereafter shall accelerate payment in whole or in part of any outstanding obligation owed to it by Debtor, under any agreement or arrangements, or if any judgment against the Debtor or any execution against any of its property for any amount remains unpaid, unstayed or undismissed for a period in excess of ten (10) days; or

(g) If Debtor shall die or cease to exist; or

(h) If there occurs any reduction in the value of the Collateral, or any act of the Debtor imperils the full performance or satisfaction of the Obligations; or

(i) If Debtor should Default on any of the terms and provisions of a Distributor Agreement to be executed by and between the Debtor and the PEPSI-COLA BOTTLING COMPANY OF N.Y., INC.; or

(j) If Debtor should Default on any of the terms and provisions of the Promissory Note executed by and between the Debtor and Secured Party on the 31st day of July, 2013.

**2.00 Debtor's Representation**. Debtor makes the following representations to the Secured Party:

2.01 Except as set forth in Promissory Note paragraph "7" dealing with a potential withdrawal liability with respect to the obligations of the Secured Party with respect to the Soft Drink Workers Union Local 812 Retirement Fund, the Collateral is free and clear of all security interests, claims, charges, encumbrances, taxes, and assessments.

2.02 Debtor will pay and perform all of the Obligation secured by this Security Agreement in accordance with the provisions contained herein.

4

2.03 There exist no offsets, claims or defenses to the Obligations.

2.04 The Collateral is lawfully and solely owned by Debtor.

2.05 Debtor has the power to execute, deliver and perform the provisions of this Agreement and all instruments and documents delivered or to be delivered pursuant hereto, and has taken or caused to be taken all necessary and appropriate actions to authorize the execution, delivery and performance of this Agreement and all such instruments and documents.

2.06 No Default presently exists, and there exists no set of facts or condition known to Debtor, which could be reasonably expected to constitute a Default under this Security Agreement by Debtor.

**3.00 Protection of the Collateral**. Debtor shall defend the title to the Collateral against all claims and demands.

3.01 Debtor shall keep the Collateral free and clear of all liens, charges, encumbrances, taxes and assessments, and shall pay when due, all taxes, assessments and fees relating to the Collateral

3.02 Debtor shall not use the Collateral in violation of any Distribution Agreement, statute, or ordinance.

3.03 Upon request of the Secured Party, Debtor shall furnish reasonable assurances of title, execute any further instruments, and do any other acts necessary to effectuate the purposes and provisions of this Agreement.

3.04 Secured Party shall have the right to obtain records from Debtor or relating to any outstanding indebtedness between Debtor and PEPSI-COLA BOTTLING COMPANY OF N.Y., INC., and obtain copies of any writings, agreements or

correspondence between Debtor and PEPSI-COLA BOTTLING COMPANY OF N.Y., INC., relating to payments due or promised.

3.05 Except as provided in the Promissory Note dated the ~~18~~ 31st day of July, 2013, Debtor shall not sell, exchange, assign, transfer, hypothecate, mortgage or otherwise dispose of the Collateral.

3.06 Debtor shall keep the Collateral in good repair and condition and shall not misuse, abuse or waste the Collateral, or allow the Collateral to deteriorate except for normal wear and tear.

3.07 The Collateral shall be kept at Debtor's place of business set forth above, except for temporary removal in connection with its ordinary use, or unless Debtor shall have obtained the prior written consent of Secured Party for its removal to another location.

3.08 Secured Party shall have the right to enter upon Debtor's premises, or the location at which the Collateral is maintained, at any reasonable time, and inspect the Collateral.

3.09 Debtor shall retain possession of the Collateral throughout the existence of this Security Agreement.

**4.00 Insurance**. Debtor at all times shall maintain insurance:

4.01 Against liability on account of damage to persons and property in the minimum sum of One Million ($1,000,000.00) Dollars with excess coverage in the minimum sum of Three Million ($3,000.000.00) Dollars, or in such amounts as required by PEPSI-COLA BOTTLING COMPANY OF N.Y., INC.

4.02 Required pursuant to the worker's compensation laws of the State of New York.

4.03 Covering such other risks as Secured Party may reasonably request.

4.04 Satisfactory to Secured Party, and shall be maintained with insurance carriers licensed to do business in the State of New York.

4.05 Naming Debtor and Secured Party as insured, and shall provide for at least ten (10) day notice of Default to Secured Party prior to cancellation.

4.06 Debtor shall from time to time, upon Secured Party's written request, promptly furnish or cause to be furnished to Secured Party evidence of the maintenance of all insurance required hereunder, including such originals or copies of policies, certificates of insurance, riders and endorsements relating thereto, and proof of payment of premiums as Secured Party may request.

4.07 If Debtor fails to maintain any insurance, at the discretion of the Secured Party, the Secured Party may obtain the insurance at the expense of Debtor, and the amount paid by the Secured Party for the insurance shall be deemed an Obligation, subject to the Rights and Remedies as set forth below in paragraphs 6.00-7.00.

4.08 Debtor hereby appoints Secured Party the attorney of Debtor in obtaining, adjusting and endorsing insurance settlements pertaining to the Collateral, and hereby assigns to Secured Party all sums which may be receivable under such insurance settlements, as additional security for the Obligations.

4.09 The risk of loss of the Collateral at all times shall be borne by Debtor.

4.10 Debtor shall give the Secured Party and the insurers immediate written notice of loss or damage to the Collateral, and shall promptly file proofs of loss with the

insurers, with a copy to the Secured Party of said proof of loss, and all correspondence between Debtor and the insurer.

**5.00 Filing and Recording.**

5.01 Debtor shall execute, deliver, and procure for the Secured Party financing statement, and other documents necessary or appropriate to protect the Security Interest granted to Secured Party hereunder against the rights and interests of third parties.

5.02 Debtor authorized the Secured Party to execute in the name of the Debtor financing statement, continuation statements, and other documents necessary or appropriate to protect and preserve the interests of the Secured Party.

5.03 Debtor shall record and file the financing statement and documents referred to in paragraph 5.01 without cost or expense to the Secured Party.

5.04 In the event that any recording or re-filing thereof (or filing of any statements of continuation or assignment of any financing statement) is required to protect and preserve the Security Interest, Debtor, at its own cost and expense, shall cause the same to be re-recorded and/or re-filed at the time and in the manner requested by Secured Party.

**6.00 Rights and Remedies**. Upon the occurrence of a Default, the Obligations shall immediately become due and payable in full, if the Default is not cured, stayed, or dismissed for the fifteen (15) days after the Secured Party gives notice of such Default.

6.01 The Secured Party shall have all Rights and Remedies and privileges provided by the Uniform Commercial Code in effect in the State of New York respecting "Default".

6.02 In addition thereto, the Secured Party may:

(a) With notice to Debtor, foreclose the Security Interest created herein by any available judicial procedure, or take possession of the Collateral, or any portion thereof, with or without judicial process, and enter any premises where the Collateral may be located for the purpose of taking possession of or removing the same, or rendering the same unusable, or disposing of the Collateral on such premises, and Debtor agrees not to resist or interfere therewith; and

(b) Require Debtor to prepare, assemble or collect the Collateral, at Debtor's own expense, and make the Collateral available to Secured Party at such time and place as Secured Party may designate in the demand; and

(c) Sell, lease or otherwise dispose of all or any part of the Collateral, whether in its then condition or after further preparation, in Debtor's name or in its own name, or in the name of such party as Secured Party may designate, either at public or private sale (at which Secured Party shall have the right to purchase), in lots or in bulk, for cash or for credit, with or without warranties or representations, and upon such other terms as Secured Party, in its sole discretion, may deem advisable. The Secured Party shall give Debtor ten days written notice of such public sale date or dates, after which private sale may occur, or such lesser period of time in the case of an emergency, shall constitute reasonable notice hereunder; and

(d) Execute and deliver documents of title, certificates of origin, or other evidence of payment, shipment or storage of any Collateral or proceeds on behalf of and in the name of Debtor; and

(d) Remedy any Default by Debtor hereunder, without waiving such Default, and any monies expended in so doing shall be chargeable with interest at the rate of NINE (9%) PERCENT per annum to Debtor and added to the Obligations secured hereby; and

(e) Apply for an injunction to restrain a breach or threatened breach of this Agreement by Debtor.

6.03 Waiver or acquiescence to any Default by the Debtor, or the failure of the Secured Party to insist upon the strict compliance of any provisions of the Note or Security Agreement, shall not constitute a waiver of a subsequent Default or failure to comply with the provisions of the Note or Security Agreement.

6.04 The Debtor shall remain liable for any deficiency resulting from a sale of the Collateral, and shall pay any such deficiency forthwith upon demand.

**7.00 Cumulative Rights**. All rights, remedies and powers granted to Secured Party herein, or in any instrument or document related hereto, or provided or implied by law or in equity shall be cumulative and may be exercised singly or concurrently, on one or more occasions.

**8.00 Notices**. All notices, requests, demands or other communications provided for herein shall be in writing and shall be deemed to have been given when sent by certified mail, return receipt requested, addressed to the parties at their respective addresses hereinabove set forth, or at such other addresses as the parties may hereinafter designate by written notice.

8.01 Debtor immediately shall notify Secured Party of any change in the address of Debtor, or discontinuance of the principal place of business of Debtor.

8.02 If Debtor fails to notify the Secured Party of a Default relating to paragraphs 1.04(c) – 1.04(h) within two (2) days after such Default, the ten (10) day time period shall commence without notice upon the date of such Default.

**9.00 Modification and Waiver.** No modification or waiver of any provision of this Agreement, and no consent by Secured Party to any breach thereof by Debtor, shall be effective unless such modification or waiver shall be in writing, and signed by Secured Party.

9.01 The modification or waiver shall thereafter be effective only for the period and upon the conditions specified in such writing.

9.02 No course of dealing between Debtor and Secured Party in exercising any Rights or Remedies hereunder shall operate as a waiver, or preclude the exercise of any other Rights or Remedies.

9.03 All Rights and Remedies shall continue unimpaired, notwithstanding any delay, extension of time, renewal, or compromise granted with regard to any of the Obligations.

**10.00 Applicable Law and Interpretation.**

10.01 This Agreement shall be construed in accordance with and shall be governed by the laws of the State of New York.

10.02 The invalidity or unenforceability of any provision of this Agreement shall not effect the validity or enforceability of any other provision of this Agreement.

10.03 The captions in this Agreement are for convenience and reference, and shall not be used to define, limit, or describe the scope or intent of this Agreement.

10.04 The gender and number used in this Agreement are used for reference term only and shall apply with the same effect whether the parties are masculine, feminine, neuter, singular or plural.

**11.00 Parties Bound by the Security Agreement.**

11.01 This Agreement shall be binding upon and inure to the benefit of the parties hereto, and their respective heirs, executors, administrators, legal representatives, successors and assigns.

11.02 Secured Party may assign this Agreement, and if assigned, the assignee shall be entitled, upon notifying Debtor, to the payment and performance of all of the Obligations and agreements of Debtor hereunder and to all of the Rights and Remedies of Secured Party hereunder. Debtor will assert no claims or defenses Debtor may have against Secured Party against the assignee.

11.03 The gender and number used in this Agreement are used for reference, and shall equally apply to parties that are corporation, partnerships, masculine, feminine, singular or plural.

**IN WITNESS WHEREOF**, the parties hereto have duly executed this Agreement on the 31st day of July, 2013.

Dated: Purchase, New York

_____
WILLIAM SANCHEZ

BRUCKNER BEVERAGE INC.

_____
By: BHAVEEN SAPRA, President

STATE OF NEW YORK        )
                         )
COUNTY OF WESTCHESTER    )   Bhaveen Safra

On the 31st day of July, 2013, before the undersigned, a Notary Public in and for the State of New York, personally appeared ~~WILLIAM SANCHEZ~~ , personally known to me or proved to me on the basis of a satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same.

         JOHN C LETTERA
   Notary Public, State of New York
        No. 02LE6211723
   Qualified in Westchester County
Commission Expires September 21, 2013

                                    NOTARY PUBLIC


STATE OF NEW YORK        )
                         )
COUNTY OF WESTCHESTER    )

On the 31st day of July in the year 2013, before me, the undersigned, a Notary Public in and for the State of New York, personally appeared WILLIAM SANCHEZ personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual executed the instrument.

                                      NOTARY PUBLIC

                     ALLAN M. STERN
        NOTARY PUBLIC, STATE OF NEW YORK
                · NO. 02ST6105979
           QUALIFIED IN NASSAU COUNTY
             COMMISSION EXPIRES
                    2/23/16

# EXHIBIT A

Distributor's Agreement dated the ___ day of _____, executed by and between BRUCKNER BEVERAGE DIST. INC. and the PEPSI-COLA BOTTLING COMPANY OF N.Y., INC., and pertaining to the Pepsi-Cola distribution territory annexed hereto, and being the same territory as is identified in the aforementioned Distributor's Agreement, beverage trucks with Vehicle Identification Numbers 1HTMMAAN74H607626 and 2NKMLZ9X95M100779, and pertaining to said territory, all of the Debtor's assets, equipment, parts, inventory, accounts receivable and the proceeds derived therefrom, now or hereinafter owned by or due the Debtor.

# MEETING OF THE BOARD OF DIRECTORS
# OF

# BUHRE BEVERAGE DIST., INC.

As permitted under the bylaws BUHRE BEVERAGE DIST., INC. ("The Company") and in accordance with the provisions of the law of the State of New York, on July 31, 2013 there was a duly constituted meeting of the Board of Directors.

William Sanchez, the sole officer and director approved the sale of The Company to BRUCKNER BEVERAGE INC. pursuant to the terms specified in the Contract of Sale dated July 31, 2013. Upon the vote of William Sanchez, The Company authorized William Sanchez to execute the Contract of Sale and other documents necessary to sell The Company to BRUCKNER BEVERAGE INC.

The undersigned hereby certifies to being duly authorized, as permitted under the bylaws of the Company to prepare these minutes of the meeting of the Board of Directors, and to certify that these minutes accurately reflect the actions of the Board.

IN WITNESS WHEREOF, I have subscribed my signature, the 31st day of July, 2013.

_____
WILLIAM SANCHEZ/ Secretary