EXHIBIT "L"

PENACHIO MALARA LLP
Counsel for the Debtor
235 Main Street
White Plains, New York 10601
(914) 946-2887

Anne Penachio, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

In re                                          :    CHAPTER 11

                                                :    CASE NO.: 14-22048 (RDD)

      BUHRE BEVERAGE DISTRIBUTION, INC.,

                                        Debtor.
------------------------------------X

**THE DEBTOR'S MOTION TO (I) ENFORCE THE AUTOMATIC STAY IMPLICATED BY 11 U.S.C. § 362(a)(3); (II) COMPEL THE TURNOVER OF PROPERTY, BOOKS AND RECORDS PURSUANT TO 11 U.S.C. § 541; (III) IMPOSE COSTS AND SANCTIONS AGAINST XENIA NUNEZ AND BILL SANCHEZ AND (IV) FOR SUCH OTHER AND FURTHER RELIEF AS IS JUST AND PROPER**

      **BUHRE BEVERAGE DISTRIBUTION, INC.**, the debtor herein (the "Debtor") in support of its motion to (I) enforce the automatic stay implicated by 11 U.S.C. § 362(a); (ii) compel the turnover of property, books and records pursuant to 11 U.S.C. § 541; (iii) impose costs and sanction against Xenia Nunez ("Nunez") and Bill Sanchez ("Sanchez"); and (iv) for such other and further relief as is just and proper, respectfully sets forth as follows:

### FACTUAL BACKGROUND

    1.    The Debtor is a New York Corporation which, for many years, has been engaged primarily in the distribution of Pepsi and other soft drinks in the Bronx, New York.

    2.    The Debtor distributes beverages supplied by Pepsi-Cola Bottling Company of N.Y., Inc. ("Pepsi Bottling") in accordance with a distribution agreement. Essentially, the

1

Debtor's 2 trucks and a small office are located at Pepsi Bottling's facility. The trucks are loaded at the facility. The driver delivers the product to the customer and collects payment which is deposited into an operating account. Pepsi automatically debits such account for amount due.

3. The Debtor's sole shareholder is Bhaveen Sapra ("Sapra"). Sapra purchased the stock, through his solely owned corporation, Bruckner Beverage, Inc. ("Bruckner"), from Sanchez in August 2013 for the sum of $1,275,000.00, pursuant to a written contract of sale. A copy of the contract is annexed hereto as Exhibit A.

4. As consideration for the Debtor's stock, Sapra paid $275,000.00 to Sanchez comprised of a check in the amount of $175,000.00 and cash in the amount of $100,000.00. Sapra was obliged to satisfy the balance of the purchase price in installments pursuant to a note. Amounts due to Sanchez under the note were secured by the stock and assets of the Debtor. A copy of the security agreement is annexed hereto as Exhibit B.

5. In furtherance of the transfer, Sanchez executed and delivered to Sapra a Bill of Sale, Affidavit and Stock Power, which are collectively annexed hereto as Exhibit C.

6. On or about August 8, 2013, Sanchez filed a UCC financing statement with the New York Security of State. He asserted a lien on the stock of Brucker and the assets of Buhre. Sanchez filed an amendment to the UCC financing statement on or about November 27, 2013 wherein he describes the collateral to include the distribution agreement between Buhre and Pepsi Bottling, vehicles, certain equipment, inventory and accounts receivable. Copies of the financing statement and amendment are annexed hereto as Exhibit D and E respectively.

7. The acquisition of the Debtor by Sapra was structured as a "stock sale" so that there would be limited conditions to closing. In this regard, it should be noted that Sapra and Sanchez had previously negotiated a transfer of the Debtor's assets to Bruckner. However, the

asset sale was not consummated due primarily to the fact that neither Sapra nor Bruckner were able to immediately meet the conditions imposed by Pepsi Bottling. One of those conditions was that Sapra obtain a Commercial Driver's License (commonly referred to as a "CDL").

8. The transaction between Sanchez and Sapra was re-structured as a sale of the Debtor's stock so that Sapra could continue the operations of the Debtor without the immediate need for the approval of Pepsi Bottling.

9. The sale, as structured, advanced the goals of both Sapra and Sanchez. Sapra wanted to purchase an established business. Upon information and belief, Sanchez, who has an interest in other businesses, wanted to divest himself of the Debtor and focus on his other businesses.

10. The Debtor has two long-time employees, John Brown ("Brown"), a driver with a CDL, and Nunez, the office manager. Upon information and belief, Nunez also works as an administrative assistant for another entity engaged in a business similar to the Debtor's.

11. In connection with the transfer of the Debtor, Sanchez had agreed to assist Sapra with the transition of the management of the Debtor. Unfortunately, he was not at all helpful to Sapra. Indeed, from the outset, Sanchez has obstructed Sapra in his efforts to manage the Debtor. For example, Sanchez (a) continued to hold himself out as "the owner' of the business and the "boss" to the two employees; (b) retained control of the Debtor's books and record; and ( c) either directly or through the Debtor's employee Nunez, maintained relationships with the Debtor's customers (ie customers were instructed not to deal with Sapra).

12. Sapra was confused by Sanchez's actions but remained hopeful that he would soon transition into managing the Debtor.

13. Despite the interference from Sanchez, Sapra attempted to manage the Debtor. His

efforts included visiting customers and attempting to oversee deliveries and payment of bills.

14. As described below, since the Debtor's Chapter 11 filing, Brown and Nunez have virtually ignored Sapra and solely report to Sanchez

15. Sanchez, who had operated the company for approximately 20 years, has not allowed Sapra to manage the Debtor. Rather, he continued to exert control over the business and the employees.[1]

16. Due to Sanchez's interference, the Debtor was unable to make installment payments to Sanchez due in connection with the acquisition of the company. Sanchez served Sapra and the Debtor with a Notice of Sale, a copy of which is annexed hereto as Exhibit F. The sale was scheduled for January 14, 2014.

17. On January 13, 2014, the Debtor filed for relief under Chapter 11 of the United States Bankruptcy Code. Mr. Sanchez, through his attorney, Allan Stern, was expressly notified of the filing. In addition to the numerous communications between my office, the Debtor, Mr. Stern and/or Mr. Sanchez, was an electronic communication dated January 15, 2014 from the undersigned's office is annexed hereto as Exhibit G. In the communication, Mr. Stern is advised by my office as follows: "Buhre has been instructed to continue business as usual which is essential for it to reorganize under Chapter 11. Buhre will endure substantial damages if prevented from operating directly or indirectly." See Exhibit G. Notwithstanding this communication, Sanchez continued to exert control over the Debtor's property.

18. Since the Debtor's Chapter 11 filing, Sanchez, with the assistance of Nunez, has exercised control over the debtor's business as if it were his own. Nunez, who is the office

---

[1] Sapra now believes that Sanchez had never wanted to convey title to the Debtor. Rather, Sapra believe that Sanchez wanted to retain his down payment, cause the Debtor to fail and recapture his old business.

manager and has control of the Debtor's day to day operations, at the behest of Sanchez, has:

    A.    Denied Sapra Access to the Debtor's offices by arranging or his security pass to be deactivated and advising security to deny him entry;

    B.    Denied Sapra access to the Debtor's books and records including the Debtor's computer system;

    C.    Refused to hand over the Debtor's mail to Sapra;

    D.    Refused to account for monies collected and provide deposit receipts;

    E.    Refused to provide Sapra with the combination to the Debtor's safes; and

    F.    Interfered with Sapra's efforts to potentially sell the Debtor's asset to a third party, another distributor (i.e. Nunez confronted Sapra in a hostile manner during his recent visit to the Debtor's office, and indicated, in sum and substance, that she would undermine his efforts to sell the Debtor. During Sapra's visit, in response to his demand for records and access to the bank account, Nunez contacted Sanchez by telephone. Sanchez advised her not to provide Sapra with information and directed her, in sum and substance, to oust him from the premises).

19.    At the meeting of creditors, Sanchez appeared with his counsel, Allan M. Stern. At the meeting, Counsel and Sanchez reiterated that no information or access would be given to Sapra. Counsel suggested, in sum and substance, that the Debtor was not entitled to access or any of the information sought.

20.    Shockingly, when the Debtor requested insurance information, Sanchez rebuffed the Debtor's request. Instead, Mr. Stern forwarded same directly to the Office of the United

5

Trustee, by-passing the Debtor and counsel's request for proof of insurance.[2]

21. In sum, Sanchez, with the assistance of Nunez, has literally taken over the Debtor's operations in direct contravention of 11 U.S.C. §§ 362 and 541.

22. It should be noted that Brown, the driver, who delivers product to the Debtor's customers, reports to Nunez and Sanchez. Brown has refused to report to the Debtor. Obviously he is fearful of Sanchez and Nunez Because Brown is a relatively junior employee who is concerned about the loss of his position and livelihood, the Debtor is not seeking redress against him at this time, but reserves the right to do so.

## THE RELIEF REQUESTED

23. By this application, The Debtor seeks to (i) enforce the automatic stay implicated by 11 U.S.C. § 362(a); (ii) compel the turnover of property, books and records pursuant to 11 U.S.C. § 541; (iii) impose costs and sanction against Nunez and Sanchez and (iv) for such other and further relief as is just and proper.

## JURISDICTION AND STATUTORY PREDICATES FOR RELIEF

24. This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§157 and 134 and the "Standing Order of Referral of Cases to Bankruptcy Judges" dated July 10, 1984 (Ward, Acting C.J.). The statutory predicates for the relief sought herein are Sections 105, 362 and 541 of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure and the Local Rules for the United States Bankruptcy Court for the Southern District of New York.

---

[2] Demands made by the Debtor and counsel have been meet with cryptic responses, in sum and substance, denying that Sanchez and Nunez are required to comply with the Bankruptcy Code. Finally, after exhausting all possibilities of a resolution, the Debtor was forced to bring the instant motion.

## THE STAY SHOULD BE ENFORCED

25. The automatic stay implicated by 11 U.S.C. § 362(a)(3) of the prohibits creditors from "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

26. In this case, Sanchez and Nunez have unequivocally exercised control over the Debtor's property, its operations, its books and records and its finances in direct contravention of 11 U.S.C. § 362.

27. Nunez, Sanchez and counsel for Sanchez have refused to comply with requests of the Debtor and its counsel to refrain from interference.

28. Clearly, it is appropriate that this Court enter an order directing Sanchez and Nunez to comply with 11 U.S.C. § 362 and cease and desist from exercising control over the Debtor's property and business.

## NUNEZ AND SANCHEZ SHOULD TURNOVER PROPERTY TO THE DEBTOR

29. Pursuant to Section 541 of the Bankruptcy Code, the Debtor's records, business, and assets are property of its Chapter 11 estate.

30. As such, Nunez and Sanchez should be directed to immediately turnover such all assets to the Debtor.

## COSTS AND SANCTIONS

31. 11 U.S.C. § 362(k)(1) provides that an " individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages. 11 U.S.C. § 362(k)(1).

32. 11 U.S.C. § 362(k)(2) limited recovery to actual costs "[i]f such violation is based

7

on an action taken by an entity in the good faith belief that subsection (h) applies to the debtor, the recovery under paragraph (1) of this subsection against such entity shall be limited to actual damages." 11 U.S.C. § 362(k)(2).

33. Courts have granted sanctions and costs in cases where, as here, the Debtor is a corporation rather than an individual. See *In re Chateaugay Corp.*.112 B.R. 526 (S.D.N.Y.,1990). It should be noted that the Court in *Chateaugay* held that a corporate debtor was entitled to relief for wilful violations of the stay under 11 U.SC. § 362(h), which preceded 11 U.S.C. § 362(k)(1).

34. At least one Court has recently held, in sum and substance, that sanctions are not available to corporate debtors under 11 U.S.C. § 3629k)(1). *In re Ampal-American Israel Corp.*, 502 B.R. 361 (Bankr. S.D.N.Y., 2013), it was suggested that corporate debtors cannot avail themselves of the relief afforded to individual debtors under 11 U.S.C. § 362(k). While precluding relief under 11 U.S.C. § 362(k), the *Ampal-American* Court noted that non-individuals still have recourse under the bankruptcy court's civil contempt power citing *Barnett Bank of Se. Ga., N.A. v. Trust Co. Bank of Se. Ga., N.A. (In re Ring)*, 178 B.R. 570, 576 (Bankr.S.D.Ga.1995). The Court noted that civil contempt would require a finding of maliciousness or bad faith, a more stringent than the standard for holding a person liable under 11 U.S.C. § 362(k)(1). .

35. In this case, it is clear that Sanchez and Nunez wilfully violated 11 U.S.C. § 362(a) by continuing to wilfully control the Debtor's property. Pursuant to 11 U.S.C. § 362(k)(1), the Debtor is entitled to sanctions and its costs and expenses.

36. In addition to or as an alternative to relief under 11 U.S.C. § 362(k)(1), the Debtor is entitled to costs and sanctions for civil contempt under the more stringent standard imposed by 11 U.S.C. § 105.

37. Both Sanchez and Nunez are guilty of civil contempt in that acted maliciously in controlling the Debtor's business and property despite numerous clear requests to stop including the written communication annexed to hereto as Exhibit F..

38. In this case, Sanchez and Nunez should be required to satisfy immediately the Debtor's counsel fees in connection with this motion estimated to total at least $7,500.00. They should also be required to reimburse the Debtor for any and all loses that it suffered as a result of their actions. Such additional losses have not yet been ascertained due to the fact that Sanchez and Nunez remain in control of the Debtor's property.

39. Notice of this application will be provided to Sanchez, Nunez, Mr. Stern and the Office of the U.S. Trustee in a manner best calculated to provide them with notice including overnight mail, hand delivery, and/or electronic mail.

40. Because this case presents no novel legal questions, the undersigned respectfully requests a waiver of the requirement of a memorandum of law.

41. No prior application has been made for the relief requested herein.

WHEREFORE, it is respectfully requested that the Debtor's motion be granted in its entirety and that Sanchez and Nunez be directed to comply with the automatic stay, turn over access and property to the Debtor, and that sanctions of at least $7,500.00 be imposed upon Sanchez and Nunez.

Dated: White Plains, New York
       March 9, 2014

                                        **PENACHIO MALARA LLP**
                                        Anne Penachio

                                        _____
                                        Anne Penachio
                                        Counsel for the Debtor
                                        235 Main Street - Suite 610
                                        White Plains, NY 10601
                                        (914) 946-2889