EXHIBIT "A"

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
WHITE PLAINS

-----------------------------------------------------------------X
In re:

BUHRE BEVERAGE DISTRIBUTION, INC.,

             Debtor.
-----------------------------------------------------------------X
WILLIAM SANCHEZ,
             Plaintiff,

  -against-

BUHRE BEVERAGE DISTRIBUTION, INC.,
BHAVEEN SAPRA, BRUCKNER BEVERAGE, INC.
and PEPSI-COLA BOTTLING COMPANY OF NEW
YORK, INC.,

             Defendants.
-----------------------------------------------------------------X

Chapter 11

Case No. 14-22048-rdd

Adv. Pro. No.: 14-08218-rdd

**AFFIDAVIT**

WILLIAM SANCHEZ, being duly sworn, deposes and says:

1. I make this affidavit in support of my Order to Show Cause (the "Sanchez OSC") seeking the entry of an Order: (a) restraining and enjoining Pepsi-Cola Bottling Company of New York, Inc. ("Pepsi") and/or any of its agents from actively and/or constructively terminating the Debtor's and/or my rights under the existing distributor agreement (the "Buhre Distributor Agreement") between Pepsi, Buhre Beverage Distribution, Inc. (alternatively, "Buhre" and the "Debtor") and me; (a) directing Pepsi to immediately restore control and operation of the certain Pepsi distribution route that covered certain territory in the Bronx, New York (the "Buhre Pepsi Route") that is the subject of the Buhre Distributor Agreement, to the Debtor under the normal and ordinary terms thereof; and (c) for such other and further relief as this Court deems just and equitable under the circumstances.

2. Since 1995, I have been the owner/operator of various soda distribution routes of

1

Pepsi. At all times prior to December 2012, I was the 100% owner of Buhre, and at all such times, Buhre was the owner of a the Buhre Pepsi Route, together with two delivery trucks, and other miscellaneous assets. Buhre's sole function is the operation of the Buhre Pepsi Route.

3. In or about September 2012, I decided to sell the Pepsi route that I owned and operated through Buhre. Ultimately, it was determined that I would sell my shares of stock in Buhre (and thereby its assets, including the Buhre Pepsi Route), to Bhaveen Sapra ("B. Sapra").

4. To that end, on July 31, 2014, B. Sapra and I executed certain documents for the purpose of transferring the shares of Buhre from myself to Bruckner Beverage Inc. ("Bruckner", a corporation wholly owned by B. Sapra).

5. Thereafter, B. Sapra owned and operated Buhre, and I provided guidance in accordance with the terms of the transfer documents executed by the parties.

6. In or around November 2013, Buhre began to default on certain of its obligations, and, as a result, on January 13, 2014 (the "Filing Date"), Buhre sought to reorganize by filing a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. Section 101-et seq (the "Bankruptcy Code").

7. On April 4, 2014, I filed an adversary proceeding with this court entitled "William Sanchez v. Buhre Beverage Distribution, Inc., Bhaveen Sapra, Bruckner Beverage, Inc. and Pepsi-cola Bottling Company of New York, Inc." bearing adversary proceeding number 14-08218 (the "Sanchez Adversary").

8. The Sanchez Adversary asserts three Claims for Relief, being:

> First Claim for Relief - pursuant to 11 U.S.C. §105(a). reforming certain documents executed in conjunction with the July 31, 2013 sale by me of the shares of stock in Buhre to conform with the intent of the parties to said transaction;
>
> Second Claim for Relief - restraining and enjoining Pepsi and/or any of their agents from actively or constructively terminating the Debtor's and/or my rights under the Buhre Distributor Agreement, and thereby the Buhre Pepsi Route;

2

> Third Claim for Relief- a full accounting of all of the monies, cash or otherwise, that have been collected by or on behalf of the Debtor, by B. Sapra or any other party, since the Filing Date.

9. Subsequent to the filing of the Sanchez Adversary, Pepsi sent a letter to Buhre and I dated April 3, 2014 (the "Pepsi Termination Letter"), terminating the Buhre Distributor Agreement effective thirty (30) days) from the date of the mailing of the Pepsi Termination Letter. A copy of the Pepsi Termination Letter is annexed to the Sanchez OSC at Exhibit "B".

10. Additionally, prior to the effective date of the Pepsi Termination Letter, and without the permission of the Bankruptcy Court, Pepsi has effectuated a de facto termination of the Buhre Distributor Agreement as it has stopped providing the Debtor with the product necessary to service the Buhre Pepsi Route and has, upon information and belief, been operating the Buhre Pepsi Route itself. Thus, Pepsi's non-sanctioned self-help has rendered the Debtor wholly unable to operate, and therefore unable to generate any monies.

11. The Debtor and I have agreed that if the Debtor is to have any hope of promulgating an effective plan of reorganization, it is imperative that the Debtor be immediately authorized to retake control of the Buhre Pepsi Route. Retaking control of the Buhre Pepsi Route will enable the Debtor to generate the funds necessary to continue operations and to ultimately put forth a viable plan of reorganization in this case.

12. The Debtor and I have further agreed that a termination of the Buhre Distributor Agreement would be devastating to the Debtor (and to me) as it would strip the Debtor of its only significant asset, the Buhre Pepsi Route, and would strip me of the majority of mycollateral[1].

---

[1] As set forth in detail in the Sanchez Adversary Proceeding, the documents that served to transfer my interest in Buhre to Bruckner inadvertently contained several mistakes (including failing to name me as the secured party in the relevant security agreement) that are sought to be reformed in the First Claim for Relief in the Sanchez Adversary. While the Sanchez OSC does not seek a determination of this matter, it is important to note that in the event that I am successful on the First Claim for Relief, which I have every belief that I will be, my security

3

13. In furtherance of our aforementioned agreement, and our recognition that it is in the best interest of myself, the Debtor and the Debtor's Estate to pursue the injunction against Pepsi that is sought in the Second Claim for Relief in the Sanchez Adversary, the Debtor and I have joined forces in preparing and filing this Order to Show Cause in order to obtain said injunction.[2]

14. The Second Claim for Relief of the Sanchez Adversary seeks the issuance of a preliminary injunction against Pepsi prohibiting Pepsi from actively or constructively terminating the Buhre Distributor Agreement and therefore the Buhre Pepsi Route.

15. I believe that I will be successful in obtaining the relief sought in the Second Claim for Relief as I will be able to demonstrate irreparable injury and a likelihood of success on the merits.

16. The Buhre Pepsi Route is by far the Debtor's most valuable asset, comprising more than 95% of the Debtor's value.

17. Therefore, if Pepsi terminates the Buhre Distributor Agreement, the Debtor will be stripped of its only significant asset, and will be rendered wholly unable to operate.

18. If Pepsi terminates the Buhre Distributor Agreement, and the Debtor is stripped of its only significant asset, my security interest will be rendered virtually valueless.

19. By virtue of the foregoing, both the Debtor and I will be irreparably harmed if Pepsi terminates the Buhre Distributor Agreement.

---

interest in the Buhre Pepsi Route shall be confirmed.

[2] The Debtor and I specifically fully reserve all of our respective rights under the First and Third Claims for Relief contained in the Sanchez Adversary.

4

20. Additionally, I believe that I will be successful in obtaining the relief sought in the First Claim for Relief, being the reformation of certain documents that were executed in conjunction with my sale of Buhre to Bruckner.

21. Therefore, as I have demonstrated irreparable harm to both myself and the Debtor if the preliminary injunction against Pepsi is not granted, and as I am able to demonstrate a likelihood of success on the merits, it is respectfully submitted that the Second Claim for Relief of the Sanchez Adversary will ultimately be successful.

22. In order to preserve the status quo pending the resolution of the Second Claim for Relief in the Sanchez Adversary, the Debtor and I are now seeking the issuance of the temporary restraining order set forth in the Sanchez OSC.

23. By virtue of the foregoing, it is respectfully submitted that in order to preserve the status quo, Pepsi should be restrained and enjoined from terminating the Buhre Distributor Agreement, and thereby the Buhre Pepsi Route, pending further order of this Court.

24. As set forth above, Pepsi has effectuated a de facto termination of the Buhre Distributor Agreement as it has stopped providing the Debtor with the product necessary to service the Buhre Pepsi Route and has, upon information and belief, been operating the Buhre Pepsi Route itself.

25. Moreover, Pepsi has undertaken this de facto termination of the Buhre Distributor Agreement without the authorization of the Bankruptcy Court in violation of the automatic stay.

26. Pepsi's non-sanctioned self-help has rendered the Debtor wholly unable to operate, and therefore unable to generate any monies.

27. As a result, the Debtor and I stand to be irreparably harmed if Pepsi is not directed to restore control of the operation of the Buhre Pepsi Route to the Debtor.

28. Upon information and belief, Pepsi has taken the aforementioned extreme steps, in part, because of issues arising from the Debtor's management of the Buhre Pepsi Route.

29. In an effort to ameliorate such issues, the Debtor and I have entered into a management agreement (the "Management Agreement" a copy of which is annexed to the Sanchez OSC at Exhibit "C"), pursuant to which I will undertake the day to day management of the Debtor's operations.

30. As I was the sole owner and operator of Buhre for many years, I am in the unique position of having an intimate knowledge of the Debtor's operations, as well as having long-standing relationships with the Pepsi personnel.

31. Both the Debtor and I believe that my operation of the Debtor pursuant to the Management Agreement will allow for a profitable operation of the Debtor's business, and may serve to alleviate some of the concerns held by Pepsi that led it to the issuance of the Pepsi Termination Letter.

32. By virtue of the foregoing, it is respectfully submitted that in order to preserve the status quo, Pepsi should be directed to restore control and operation of the Buhre Pepsi Route to the Debtor under the normal and ordinary terms thereof.

/s/ William Sanchez
WILLIAM SANCHEZ

Sworn to before me this
29th day of April, 2014

/s/ Michael G. Mc Auliffe
Notary Public State of New York
No. 02MC5062957
Qualified in Nassau County
Commission Expires July 15, 2014