EXHIBIT "E"

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
WHITE PLAINS
------------------------------------------------------------X
In re:                                          Chapter 11

BUHRE BEVERAGE DISTRIBUTION, INC..,             Case No. 14-22048-rdd

                        Debtor.                 **AFFIDAVIT**
------------------------------------------------------------X

ALLAN M. STERN, ESQ., being duly sworn, deposes and says:

1.      I make this Affidavit in support of the Order to Show Cause of Sanchez (the

"Sanchez OSC") seeking the entry of an Order: (a) pursuant to 11 U.S.C. §105(a) reforming certain

documents executed in conjunction with the July 31, 2013 sale by Sanchez of the shares of stock in

Buhre to conform with the intent of the parties to said transaction; (b) restraining and enjoining

Pepsi-Cola Bottling Group of New York, Inc. ("Pepsi") and/or any of their agents from terminating

the Debtor's and/or Sanchez's rights under the certain distribution agreement by and between Pepsi

and Buhre; (c) authorizing Sanchez, as the minority shareholder of the Debtor, to immediately

undertake responsibility for the Debtor's operations in order to preserve the Debtor's primary asset,

the distributor route with Pepsi, as such route has been placed in dire jeopardy by the post-petition

actions of the Debtor's current management; and (d) for such other and further relief as this Court

deems just and equitable under the circumstances.

2.      At all times prior to December 2012, Sanchez was the 100% owner of Buhre

Beverage Distribution, Inc. ("Buhre", the current debtor corporation), and that at all such times,

Buhre was the owner of a certain Pepsi distribution route that covered certain territory in the

Bronx, New York (the "Buhre Pepsi Route"), together with two delivery trucks, and other

miscellaneous assets.

1

3.    Bhaveen Sapra ("B. Sapra") wanted to take over the Buhre Pepsi Route, and in order to do this, his father Pratap Sapra ("P. Sapra") arranged for him to purchase said Route from Sanchez. Specifically, Sanchez agreed to sell Buhre's assets, including the Buhre Pepsi Route, to Bhaveen Sapra ("B. Sapra") for $1,175,000.00 (which sum was later voluntarily reduced by Sanchez to $1,153,000.00). As B. Sapra did not have sufficient cash to close on the transaction, it was agreed that Sanchez would hold a note in the sum of $900,000.00 for the balance of the purchase price, and take back a purchase money security interest in Buhre's assets until such time as the note was paid in full.

4.    The transaction was originally intended to take the form of a sale of Buhre's assets to a corporation owned by B. Sapra. However, solely in order to accommodate B. Sapra and his continued inability to obtain the requisite approval from Pepsi, Sanchez agreed to reconfigure the transaction to one in which Sanchez sold the shares of stock in Buhre, rather than just the assets, to a corporation owned by B. Sapra. The details of reconfiguration, and the reasons therefor, are set forth fully below, but suffice it to say that the parties intent remained the same - that Sanchez would sell the shares of stock in Buhre (together with all of its assets) for $1,153,000.00 and that Sanchez would hold a note in the sum of $900,000.00 for the balance of the purchase price and take back a purchase money security interest in Buhre's stock and Buhre's assets until such time as the note was paid in full.

5.    Unfortunately, the reconfiguration of the transaction (much of which occurred at the last minute) resulted in there being several documents executed by the parties that inadvertently did not properly reflect the clear intention of the parties. In fact, a careful review of the documents executed by the parties on July 31, 2013 (the "Inaccurate Documents") clearly evidences that they

2

could not have properly encompassed the intent of the parties, as they are internally inconsistent and, if left "as is", would lead to an absurd result. For instance, the security agreement executed as part of the Inaccurate Documents lists Bruckner Beverage Inc. ("Bruckner", a corporation wholly owned by B. Sapra) as the Debtor, but lists the secured party as Buhre, which essentially gives Buhre a security interest in itself. Surely, this result was not the result intended by the parties as it is wholly nonsensical.

6.      Since 1995, Sanchez has been the owner/operator of various soda distribution routes of Pepsi. One of the Pepsi distribution routes covered territory in the Bronx, New York, the Buhre Pepsi Route, and was owned by Sanchez through his wholly owned corporation, Buhre.

7.      In or about September 2012, Sanchez decided to sell the Pepsi route that he owned and operated through Buhre. He had discussions with P. Sapra, who advised him that he wanted to set his son B. Sapra up in a business, and Buhre's Pepsi Route seemed like just the thing.

8.      All operators of Pepsi distribution routes must be approved by Pepsi, and as such, B. Sapra applied to Pepsi for approval to operate such a route. However, at an interview with Pepsi's Transfer Committee on December 13, 2013, Pepsi denied B. Sapra's application based on his lack of experience and the fact that he did not hold a Commercial Driver's License ("CDL") or a green card. Pepsi advised B. Sapra that in order to obtain approval from Pepsi he would need to secure a green card and a CDL, and provided him with criteria to follow in order to gain the requisite experience.

9.      On December 27, 2012, Sanchez entered into a contract for the sale (the "December 2012 Contract", a copy of which is annexed hereto at Exhibit "C") of Buhre's assets to PBR Beverage, Inc. ("PBR"), a corporation wholly owned by B. Sapra. The parties anticipated that B.

3

Sapra would expeditiously satisfy the requirements that would enable him to obtain the requisite approval from Pepsi, and that a closing on the December 2012 Contract would take place in January or February of 2013. In accordance with the terms of the December 2012 Contract, certain documents were prepared that would effectuate the sale pursuant to said Contract. These documents (collectively, the "2012 Documents" copies of which are annexed hereto at Exhibit "D") were:

a.   A promissory note with PBR as "maker" and Buhre as "payee", pursuant to which PBR promised to pay Buhre the sum of $900,000.00 over one-hundred and forty-four months at 6 ½ percent interest;

b.   A security agreement with PBR as "debtor" and Buhre as "secured party", pursuant to which PBR granted Buhre a security interest in the Pepsi Cola Distributor Agreement, together with all accounts receivable and equipment;

c.   A bill of sale listing Buhre as "seller" and PBR as "purchaser"; and

d.   Two motor vehicle bills of sale for the two trucks owned by Buhre, listing Buhre as "seller" and PBR as "buyer".

10.   In accordance with the terms of the 2012 Documents, B. Sapra secured a green card, and Sanchez allowed B. Sapra to work the route with him in order to gain the necessary experience. B. Sapra, however, never obtained his CDL, and in or about April 2013, Pepsi again denied his application for approval.

11.   B. Sapra then determined to enter into a partnership with John Brown ("Brown[1]") to purchase the Buhre Pepsi Route, as Brown had the requisite experience and CDL, and had been previously approved by Pepsi as a route operator. Approval from Pepsi was obtained and a closing date was fixed for mid-July, but on the day of the closing, Sanchez was advised that the

---

[1]   Brown worked as a driver for Buhre while it was operated by Sanchez, and remained with the Debtor upon it's sale to B. Sapra.

closing was being adjourned due to alleged "concerns about Brown."

12.     Over the next several days the parties engaged in various discussions. During these discussions, it was determined that B. Sapra did not have the cash available that was required at the closing (the December 2012 Contract required the payment of $100,000.00 cash at the closing), and Sanchez agreed to reduce the purchase price by $22,000.00 and to take the balance due in the form of a promissory note in the sum of $78,000.00 payable on or before November 1, 2013, instead of cash. As the parties had resolved Sapra's cash deficiency problem, the alleged "concerns about Brown" evaporated and it was agreed that the parties would move forward with a closing.

13.     B. Sapra was anxious to close as soon as possible as it was July and the Summer months are the most lucrative for a soda distribution route. On July 31, 2013, a meeting was held (the "July 31st Meeting") between B. Sapra, his counsel John Lettera, Esq. ("Lettera"), Sanchez myself, which meeting was held at Lettera's office. At the July 31st Meeting, the parties agreed that due to Brown and Pepsi's unavailability to close in August, the parties would amend the December 2012 Contract to provide for a sale of the stock of Buhre to B. Sapra's corporation instead of a sale of the assets, which transaction could be effectuated without the participation of Brown or Pepsi.

14.     To that end, at the July 31st Meeting, the parties negotiated and entered into a second contract of sale dated July 31, 2013 (the "July 2013 Contract", a copy of which is annexed to the Sanchez OSC at Exhibit "E") between Sanchez and Bruckner, a corporation wholly owned by B. Sapra for the sale of 100% of the shares in Buhre to Bruckner. The July 2013 Contract expressly incorporated the terms of the December 2012 Contract. See the July 2013 Contract at paragraph 1.

5

15.     At the July 31st Meeting, the parties confirmed the terms of the transfer of the shares

of Buhre from Sanchez to Bruckner (the "Agreed-Upon Transaction") as follows: (a) Sanchez

would transfer 100% of the shares in Buhre to Bruckner for the sum of $1,153,000.00, payable by

way of $175,000.00 at the closing and two promissory notes for the balance; (b) Sanchez would

receive two promissory notes from Bruckner, one in the sum of $78,000.00 payable on or before

November 1, 2013 and one in the sum of $900,000.00 payable over 144 months at 6 ½ percent

interest; (c) Sanchez would receive a security interest in the shares of Buhre and all of it's tangible

and intangible assets, including the Buhre Pepsi Route which was initially held under the

distributor agreement between Buhre and Pepsi, and would later be held under a distributor

agreement between Bruckner and Pepsi (once B. Sapra was able to obtain same); (d) Sanchez

would retain one share of stock in Buhre until such time as Bruckner obtained its distributor

agreement with Pepsi, at which time the remaining one share in Buhre would be transferred by

Sanchez to Bruckner for no further consideration.

16.     During the course of the July 31st Meeting, the parties discussed the documents

necessary to effectuate the Agreed-Upon Transaction, and such documents were drafted by Lettera

at the Meeting. The closing on the July 2013 Contract took place at the July 31st Meeting, at which

time the parties executed the Inaccurate Documents for the purpose of effectuating the Agreed-

Upon Transaction. Unfortunately, the Inaccurate Documents inadvertently contained several

mistakes that served to potentially alter the effectiveness of the Inaccurate Documents.

Specifically, the Inaccurate Documents, and the mistakes contained therein, were:

     a.     A promissory note with Bruckner as "maker" and Buhre as "payee",
             pursuant to which Bruckner promised to pay Buhre the sum of $900,000.00
             over one-hundred and forty-four months at 6 ½ percent interest (the "900K
             Promissory Note", a copy of which is annexed to the Sanchez OSC at
             Exhibit "F"). The "payee" on the 900K Promissory Note should have been
             Sanchez, not Buhre;

b.    A promissory note with Bruckner as "maker" and Sanchez as "payee", pursuant to which Bruckner promised to pay Buhre the sum of $78,000.00 on or before November 1, 2013, with interest to accrue at 12% only if the full balance was not paid in full by November 1, 2013 (the "78K Promissory Note", a copy of which is annexed to the Sanchez OSC at Exhibit "G"). There were no mistakes contained in this document;

c.    A security agreement with Bruckner as "debtor" and Buhre as "secured party", pursuant to which Bruckner granted Buhre a security interest in the shares of Buhre and the Pepsi Cola Distributor territory, together with all accounts receivable and equipment related thereto (the "2013 Security Agreement", a copy of which is annexed to the Sanchez OSC at Exhibit "H"). The "secured party" should have been Sanchez, not Buhre, and the collateral description should have been:

> A certain distributorship agreement by and between Pepsi-Cola Bottling Company of New York, Inc., Buhre Beverage Dist., Inc. and William Sanchez, and all of the sales proceeds, and other assets associated with the performance of the distributor agreement including a 2004 International Harvester truck bearing VIN 1HTMMAAN74H607626, a 2005 Kenilworth van VIN 2NKMLZ9X95M100779, miscellaneous hand trucks and computer records related to the distributorship, and the shares of Buhre Beverage Dist., Inc. conveyed by a security agreement dated July 31, 2013

d.    A bill of sale listing Sanchez as "seller" and Bruckner as "buyer" (the "2013 Bill of Sale, a copy of which is annexed to the Sanchez OSC at Exhibit "I"). There were no mistakes contained in this document;

e.    A stock power pursuant to which Sanchez transferred one share of Buhre stock to Bruckner (the "Single-Share Stock Power" a copy of which is annexed to the Sanchez OSC on Exhibit "J"); and

f.    A UCC-1 financing statement listing the "debtors" as Buhre and Bruckner and asserting a lien against the following collateral: (a) shares of stock of Bruckner; and (b) assets of Buhre (the "UCC-1", a copy of which is annexed to the Sanchez OSC at Exhibit "K". This document was amended by the UCC-3 Amendment described below.

17.    Thereafter, on or about November 4, 2013, a UCC-3 amendment (the "UCC-3 Amendment", a copy of which is annexed hereto at Exhibit "L"), was filed to amend the UCC-1, which restated the collateral as being "[t]he Distributor Agreement by and between Bruckner

Beverage, Inc. and the Pepsi-Cola Bottling Company of New York, Inc. and pertaining to a certain

Pepsi-Cola distribution territory conveyed July 31, 2013, beverage trucks with vehicle

identification numbers1HTMAAN74H607626 and 2NKMLZ9X95M100779, and pertaining to that

said territory, all of the Debtor's equipment, parts, inventory, accounts receivable and the proceeds

derived therefrom, now or hereinafter owned by or due the Debtor." (For the purposes of this

OSC, the UCC-3 Amendment shall be included in the Inaccurate Documents.) The collateral

description contained in the UCC-3 Amendment should have read:

> A certain distributorship agreement by and between Pepsi-Cola Bottling
> Company of New York, Inc., Buhre Beverage Dist., Inc. and William
> Sanchez, and all of the sales proceeds, and other assets associated with the
> performance of the distributor agreement including a 2004 International
> Harvester truck bearing VIN 1HTMMAAN74H607626, a 2005 Kenilworth
> van VIN 2NKMLZ9X95M100779, miscellaneous hand trucks and computer
> records related to the distributorship, and the shares of Buhre Beverage
> Dist., Inc. conveyed by a security agreement dated July 31, 2013.

18.     Despite the inadvertent mistakes contained in the Inaccurate Documents, Sanchez,

B. Sapra, the Debtor and its counsel have all continued to act in compliance with the true intent of

the parties regarding Agreed-Upon Transaction and what the Inaccurate Documents should have

stated from the time of their execution, which is that Sanchez is the proper payee on the $900k

Promissory Note, the proper secured party on the 2013 Security Agreement, and that the collateral

listed on the 2013 Security Agreement and the UCC-3 Amendment should have been as set forth

above.

above.

19.    Here, it is clear that the Inaccurate Documents were executed under the mutual mistake of both parties, being Sanchez and B. Sapra. The true intent of the parties was that Sanchez would sell the shares of stock in Buhre, together with all of its assets, to Bruckner (B. Sapra s corporation) for $1,153,000.00, that Sanchez would take back two promissory notes from Bruckner, one in the sum of $900,000.00 and the other in the sum of $78,000.00, and that the payment of the monies due under the promissory notes to Sanchez would be secured by Sanchez s security interest in the shares of stock in Buhre, Buhre s distributor agreement with Pepsi regarding the Buhre Pepsi Route (and later the distributor agreement between Bruckner and Pepsi that would take over the Buhre Pepsi Route, once B. Sapra satisfied the conditions necessary to obtain such agreement), together with all other tangible and intangible assets of Buhre and Brucker.

20.    The following collateral description fully and fairly reflects the intent of the parties regarding Sanchez s security interest under the Agreed-Upon Transaction:

> A certain distributorship agreement by and between Pepsi-Cola Bottling Company of New York, Inc., Buhre Beverage Dist., Inc. and William Sanchez, and all of the sales proceeds, and other assets associated with the performance of the distributor agreement including a 2004 International Harvester truck bearing VIN 1HTMMAAN74H607626, a 2005 Kenilworth van VIN 2NKMLZ9X95M100779, miscellaneous hand trucks and computer records related to the distributorship, and the shares of Buhre Beverage Dist., Inc. conveyed by a security agreement dated July 31, 2013.

ALLAN M. STERN

Sworn to before me this
3rd day of April, 2014

_____
Notary Public

GREGORY N DICK
Notary Public - State of New York
NO. 01DI6150113
Qualified In Queens County
My Commission Expires 7-24. 2016

9