EXHIBIT "F"

# PROMISSORY NOTE

Principal Balance: $900,000.00
Date: December 27, 2012

FOR VALUE RECEIVED, PBR BEVERAGE INC., doing business at 22 Stony Hollow, Chappaqua, New York 10514, hereinafter referred to as "MAKER", and BUHRE BEVERAGE DIST, INC., a New York corporation having its principal offices at 650 Brush Road, Bronx, New York 10465, hereinafter referred to as "PAYEE", do hereby acknowledge that the MAKER agrees to pay the principal sum of NINE HUNDRED THOUSAND ($900,000.00) DOLLARS with interest as follows:

> In consecutive monthly installments of NINE THOUSAND SEVENTEEN DOLLARS AND TWENTY-NINE CENTS ($9017.29) commencing on _____, 2013, the date that is ninety (90) days from the date of the Company Closing, and thereafter paid on the __ day of each month for a total of ONE HUNDRED AND FORTY-FOUR (144) consecutive months, to be applied first to interest at a rate of SIX AND ONE-HALF (6.5%) PERCENT per annum, balance in reduction of principal, until fully paid.
>
> Except as otherwise provided herein, the entire sum of $900,000.00 together with fees and interest due thereon shall be paid in full no later than _____, 2025.
>
> The Contract of Sale executed simultaneously herewith between PAYEE, as Seller, and MAKER, as Purchaser, identifies the term "Company Closing". As used therein, and incorporated herein by reference, this Promissory Note will be amended at the Company Closing by specifying: the first Promissory Note payment, which will be due on a specified date ninety (90) days after the date of the Company Closing; the due date of each successive monthly payment; and, the final payment due date.

1.  MAKER and the PAYEE each hereby waive trial by jury in any action or proceeding arising on, out of, under or by reason of this Note.

Execution Counterpartsegment>

2. The MAKER hereby waives notice of presentment for payment, demand for payment, except as provided in paragraph 4, notice of non-payment and dishonor, protest and notice of protest.

3. If this Note is not paid when due and if it is placed with an attorney for collection, the MAKER hereby agrees to pay all reasonable and actual costs and expenses of collection incurred by the PAYEE plus a reasonable attorney's fee which shall be applied to the amount due under this Note and recoverable with the amount due hereunder. For every notice of default PAYEE's attorney sends to the MAKER, MAKER shall be obligated to pay a legal fee of $150.00. If the PAYEE accepts a payment despite knowing that MAKER has breached a provision of this Note, the PAYEE shall not be deemed to have waived the right to obtain a remedy for such breach, to the extent the breach remains uncured following such payment. Payment by MAKER or receipt by the PAYEE of a lesser amount than the amount(s) then due shall be deemed an "on account" payment of the earliest monthly payment or additional amount then unpaid. No endorsement, statement on any check, or any letter accompanying a check or payment shall be deemed to be an accord and satisfaction. The PAYEE may accept such check or payment without prejudice to the PAYEE's right to recover the balance due, or pursue such other remedy as provided in this Note or available at law.

4. The MAKER and the PAYEE each hereby expressly and unconditionally agree that if any payment required hereunder is not paid on or before the tenth (10th) day after the due date, MAKER will pay, if charged by PAYEE, a "late charge" of four (4) cents for each dollar so overdue. Upon the occurrence of a default, the arrearages, and costs of collection shall immediately become due and payable in full, if the default is not

C&F: 2058900.1

cured, stayed, or dismissed not later than FIFTEEN (15) days after the PAYEE gives notice of such default by certified mail, return receipt requested. Furthermore, the MAKER shall pay the sum of ONE HUNDRED AND FIFTY ($150.00) DOLLARS to the attorney for the PAYEE as a legal fee in connection with the mailing of each notice of default. Each of the legal fees shall be due and payable not later than the next monthly note due date. Failure to pay a late fee shall be deemed to be a default.

5. In the event of a strike against The Pepsi-Cola Bottling Company of New York, Inc. or its successor or assign (the "COMPANY"), which prevents the MAKER from securing beverages for distribution, or in the event of an interruption of the supply of beverage products through no fault and not within the control of the MAKER, the payment of this Note herein shall be suspended during the pendency of such strike or interruption for the following periods:

(a) In the event such strike, lockout or interruption against the COMPANY lasts no longer than thirty (30) days, all missed payments shall be repaid to the PAYEE within a period of sixty (60) days from the date the strike, lockout or interruption ends, and MAKER's truck is loaded with product. Interest shall not be charged for the moratorium period.

(b) In the event a strike, lockout or interruption exceeds thirty (30) days, then the term of the note shall be extended by a period equal to the number of monthly payments deferred during the strike or interruption. Deferred installments shall be paid monthly, commencing one (1) month after the last installment payment due pursuant to the Note. The Security Agreement executed

3

at closing shall be extended by a period equal to the number of deferred monthly Note payments. Interest shall not be charged for the moratorium period.

6. The MAKER may desire to: (i) convey all or a portion (a "Route Portion") of the distribution territory set forth in Exhibit A annexed hereto and made a part hereof (the "Territory") to another distributor approved by the COMPANY; and (ii) assign this Note to such transferee. MAKER may only do so pursuant to the terms of this paragraph and paragraph 7:

(a) When MAKER intends to sell all or part of the distribution route, MAKER will advise the PAYEE of his intention to sell, notifying PAYEE of the name, address, and Employer Identification Number of the proposed corporate MAKER, and the name, date of birth, social security number and home address of the principal shareholder(s) of the proposed corporate maker (jointly "New MAKER").

(b) Not later than five (5) days prior to closing, MAKER shall provide the PAYEE with a copy of the UCC filing receipt for the New MAKER, and a copy of the judgment and lien search upon the New MAKER.

(c) Not later than thirty (30) days prior to closing upon a Route Portion, MAKER shall provide to PAYEE the map and territorial description of the Route Portion. In addition, MAKER shall provide PAYEE with a sworn statement as to the number of cases sold within the Route Portion and the Territory in the prior year, and MAKER shall annex thereto a computer printout prepared by the COMPANY identifying the cases sold in the Route Portion and the Territory during the year prior to closing ("Re-sale Statement").

C&F: 2058900.1

(d)  In the event of the transfer of a Route Portion, the Note principal balance to be assumed by the New MAKER shall be determined by a fraction, the numerator of which shall be the cases sold by the MAKER in the Route Portion during the year prior to closing, and the denominator shall be the cases sold in the Territory during the year prior to closing.  Said fraction shall then be used to determine the amount of the Note principal balance to be assumed by the New MAKER ("New MAKER Principal Balance").  For example, if the MAKER represents in the Re-Sale Statement that the MAKER sold 25,000 cases in the Route Portion during the year prior to closing, and 125,000 cases for the Territory, then New MAKER shall assume the principle balance equal to one-fifth (25,000/125,000) of the then existing principle balance due upon this Note pertaining to the Territory between MAKER and PAYEE.  If at the closing with the New MAKER, the principal balance due upon this Note between MAKER and PAYEE is TWO HUNDRED THOUSAND ($200,000.00) DOLLARS, then by multiplying one-fifth by $200,000.00, the New MAKER Principal Balance can be calculated to be FORTY THOUSAND ($40,000.00) DOLLARS (1/5 x $200,000.00).  At closing MAKER, PAYEE, and New MAKER will execute an agreement commonly referred to as a "Wraparound Agreement" whereby the New MAKER will agree to assume the FORTY THOUSAND ($40,000.00) DOLLAR principal balance, and will simultaneously execute a promissory note to that effect, subject to the same terms as set forth in this Note between MAKER and PAYEE ("Old Note").  As a result, the Wraparound Agreement will reflect

5

that the Old Note shall be amended to reflect the assumption of the NEW MAKER Principal Balance by the New MAKER.

(e) In the event of a buyout by the COMPANY, the provisions of section 7.00 et. seq. shall supercede the provisions of section 6. et. seq.

(f) As a condition to the assumption of the NEW MAKER PRINCIPAL BALANCE by the NEW MAKER, at or before closing, MAKER shall pay PAYEE any outstanding amounts due and owing (including but not limited to expenses hereinafter referred to as "Outstanding Arrearages": defaults, late fees, bounced check fees, unreimbursed fees incurred by PAYEE, attorneys fees). MAKER must also pay any legal document preparation fees incurred by PAYEE not to exceed SEVEN HUNDRED AND FIFTY DOLLARS ($750.00), and in addition thereto, MAKER shall pay an appearance fee of SEVEN HUNDRED AND FIFTY DOLLARS for each appearance at a closing or rescheduled closing by the attorney for the PAYEE. MAKER shall additionally be liable for all reasonable filing fees incurred by the PAYEE.

(g) As further consideration for the PAYEE's agreement to allow MAKER to convey to NEW MAKER, at or before closing, MAKER herein must pay the PAYEE the sum of TWENTY-FIVE THOUSAND ($25,000.00) DOLLARS in reduction of the principal balance then due ("Resale Payment"). The Resale Payment shall be in addition to of any Outstanding Arrearages. If the total of the Outstanding Arrearages and the Resale Payment exceed the Note principal balance with interest, then MAKER shall first pay the Outstanding

Arrearages, with the balance to be paid to satisfy the remaining Note principal balance with interest through the date of satisfaction.

7. The parties hereto recognize the need to agree upon a settlement procedure to be utilized in the event that prior to the satisfaction of the Note, the Distributor Agreement expires, and MAKER is not permitted by the COMPANY to operate the distributorship in the Territory. For the purpose of this paragraph, payments made by the COMPANY to purchase MAKER's rights to the route, for a restrictive covenant pertaining to MAKER's principal officer, or any other payments directly or indirectly to MAKER or MAKER's principal officer, or MAKER's successors or assigns, for the extinguishments or release of rights held by MAKER relating to the Distributor Agreement then in effect between MAKER and COMPANY, shall be considered to be part of the BUYOUT PAYMENT as used herein. Payments to MAKER for vending equipment, vehicles, or other equipment shall be included in the calculation of the BUYOUT PAYMENT only to the extent that such payments exceed the fair market value of such equipment. In the event that the COMPANY purchases from MAKER the rights which MAKER possesses to distribute PRODUCTS pursuant to the Distributor Agreement then in effect, MAKER agrees to pay to PAYEE the principal balance of this Note with interest, fees, and expenses ("TOTAL BALANCE") then due PAYEE subject to the following terms:

(a) In the event that the payment by the COMPANY is to be pursuant to certain terms (i.e. payment of x years, principal payment without interest, etc.), the PAYEE agrees to accept further payments based upon the BUYOUT terms to be paid to the COMPANY.

(b) If permitted by the COMPANY, MAKER shall direct the COMPANY to pay directly to the PAYEE, the amounts due PAYEE.

(c) MAKER and PAYEE hereby agree to execute the documents and/or authorizations required by the COMPANY, and to close in a timely manner with the COMPANY in the event of a COMPANY buyout. As part of PAYEE's rights pursuant to this paragraph, MAKER agrees to provide PAYEE with a copy of the final COMPANY proposal within not later than forty-five (45) days prior to the BUYOUT closing scheduled by the COMPANY.

(d) The parties recognize that notwithstanding the provisions of this paragraph, PAYEE has made no representations that the COMPANY will make an offer to purchase the distributorship. It is further acknowledged that the COMPANY may not extend the term of the current Distributor Agreement, and accordingly, the rights to operate the distributorship being conveyed may expire without a BUYOUT prior to the satisfaction of this Note. In the event that the distribution rights expire, the MAKER is not permitted to operate the distributorship, and MAKER receives no BUYOUT PAYMENT, subject to the provisions of paragraph 7(e), MAKER shall only be obligated to pay PAYEE the principal, interest, and fees due through the last day that MAKER operates the route. As used herein, the term MAKER shall include any agent or successor in interest to the MAKER.

(e) If MAKER, MAKER's principal officers, or MAKER's successor or assigns (jointly referred to as "Plaintiff") files a claim or commences litigation against the COMPANY relating to the Distributor Agreement, and Plaintiff

8

obtains a settlement or judgment, then subject to the provisions of paragraph 7.00 et. seq., Plaintiff shall be obligated to pay PAYEE the TOTAL BALANCE then due and owing, in addition to fees and expenses reasonably incurred by PAYEE prior to, or in the course of such claim or litigation and/or settlement. The provisions of paragraph 7.00 et. seq. shall be applied based upon the proceeds derived by the MAKER after the payment and/or reimbursement to the MAKER of its reasonable litigation costs. Pending judgment award or settlement, if MAKER is prevented from operating the route as set forth in paragraph 7.00 et. seq., MAKER will be required to make the Note payments due for the month in which MAKER's operation was terminated. Thereafter, MAKER will not make further note payments until the successful execution upon such a judgment, award, or settlement.

8. This Note is secured by a loan Security Agreement made by the MAKER, as mortgagor, to the PAYEE of mortgagee on even date, encumbering among other assets the MAKER's distributorship business described in the territorial map attached hereto.

9. This Note may be prepaid at any time and from time to time without penalty, in ONE THOUSAND ($1,000.00) DOLLAR increments, and to be paid in reduction of principal in inverse order. Interest upon said prepayment shall be due as of the date of payment, and shall be paid simultaneous with the prepayment.

10. Nothing contained in this Note or in any other agreement between the MAKER and the PAYEE requires the MAKER to pay, or the PAYEE to accept interest in an amount which would subject the PAYEE to any penalty or forfeiture under applicable law. In no event shall the total of all charges payable hereunder, whether of

C&F: 2058900.1

interest or of such other charges which may or might be characterized as interest, exceed the maximum rate permitted to be charged under the laws of the State of New York. Should the PAYEE receive any payment which is or would be in excess of that permitted to be charged under said laws, such payment shall have been, and shall be deemed to have been made in error and shall automatically be applied to reduce the principal indebtedness outstanding on this Note.

11. This Note may not be modified except and only by a written instrument executed by the party to be charged therewith in the same manner as this Note has been executed.

12. This Agreement may be executed in one or more counterparts, any of which may be transmitted by facsimile or other electronic method, each of which shall be deemed an original, but which together will constitute one and the same instrument.

13. This Note shall be governed by and construed in accordance with and pursuant to the laws of the State of New York.

[Balance of page intentionally left blank. Signature follows.]

14. The MAKER acknowledges that this Note constitutes a valid and binding indebtedness for NINE HUNDRED THOUSAND ($900,000.00) DOLLARS.

Dated: December 27, 2012
White Plains, New York

PBR BEVERAGE INC.

_____
BHAVEEN SAPRA, President

Witnessed:

_____

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF WESTCHESTER  )

On the 27th day of December in the year 2012, before me, the undersigned Notary Public in and for the State of New York, personally appeared BHAVEEN SAPRA, residing at 22 Stony Hollow, Chappaqua, New York 10514, to me known, who, being by me duly sworn, did depose and say that he is the President of PBR Beverage Inc., the corporation described in and which executed the foregoing instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the board of directors of said corporation, and that he signed his name thereto by like order.

_____
NOTARY PUBLIC

[Signature page to Promissory Note]

C&F: 2058900.1

## SECURITY AGREEMENT

SECURITY AGREEMENT (the "Agreement"), executed this 27th day of December, 2012 by and between PBR BEVERAGE INC., a New York corporation doing business at 22 Stony Hollow, Chappaqua, New York 10514 ("Debtor"), and BUHRE BEVERAGE DIST, INC., a New York corporation having its principal offices at 650 Brush Road, Bronx, New York 10465 ("Secured Party").

WHEREAS, by the Promissory Note executed by Debtor this 27th day of December, 2012, Debtor is obligated to pay to Secured Party the sum of NINE HUNDRED THOUSAND ($900,000.00) DOLLARS (the "Note"); and

WHEREAS, in order to induce Secured Party to accept the Note, Debtor pledges to the Secured Party, certain property as security for the loan, to wit: that certain distributor agreement with the Pepsi-Cola Bottling Company Of N.Y., Inc. (the "Distributor Agreement") identified in Exhibit A annexed hereto, for the distribution territory (the "Territory") identified therein; and

WHEREAS, the Secured Party would not have agreed to accept the Note, without Debtor's execution of this Agreement; and

WHEREAS, this Security Agreement shall also secure performance of any other obligation of the Debtor to the Secured Party related to the Distributor Agreement or Territory, whether direct or indirect, absolute or contingent, due or to become due, now existing or arising hereunder, including all future loans, advances, or conveyances made at the option of the Secured Party to the Debtor.

NOW, **THEREFORE**, in consideration thereof, the parties hereto agree as follows:

**1.00 Definitions.** The following terms as used in this Agreement shall have the meanings set forth below:

1.01 "Collateral" is defined as the Pepsi-Cola Distributor Agreement, together with all accounts receivable, and equipment pertaining to the Distributor Agreement and the Territory.

1.02 "Obligations" of the Debtor secured by this Agreement is defined as:

(a) Payment or performance of the terms and conditions of the Note, and all existing and future agreements, debts, and liabilities, related to that certain Contract of Sale of even date herewith, whether direct or indirect, absolute or contingent, of the Debtor to the Secured Party, including but not limited to those arising under this Agreement; and

(b) Payment of the expenses, including attorney's fees and legal expenses incurred or paid by the Security Party in pursuing, searching for, assembling and preservation of the collateral, and enforcement of the rights or obligations of the Debtor hereunder, including the expenses incurred by the Secured Party in performing on behalf of the Debtor, any of the Obligations of the Debtor.

1.03 "Security Interest" is defined as the right, title, and interest which the Debtor conveys to the Secured Party in and to the Collateral. The Security Interest entitles the Secured Party to the full and prompt payment and performance of the Obligations,

1.04 "Default" is defined as the occurrence of any one or more of the following events:

C&F: 2059659.1

(a) Debtor fails to pay, perform or observe any covenant, agreement, term or provision of this Agreement, the Note, or any other agreement now or hereafter entered into between the parties hereto, related to the Contract of Sale, or with respect to any Obligation of Debtor to Secured Party, beyond any applicable grace and/or cure period; or

(b) Debtor intentionally had made or makes false or misleading representations, warranties or other statements to the Secured Party, relating to the provisions of this Agreement or the Note; or

(c) Debtor admits in writing to its inability to pay its debts generally as they become due; files a petition for relief under the bankruptcy laws or a petition to take advantage of any insolvency act (which petition is not withdrawn within120 days); makes an assignment for the benefit of creditors; commences a proceeding for the appointment of a receiver, trustee, liquidator or conservator of itself or the whole or any substantial part of its property (which petition is not withdrawn within120 days); files a petition or answer seeking reorganization or arrangement or similar relief under the Federal Bankruptcy Laws or any other applicable law or statute of the United States or any State (which petition is not withdrawn within120 days); or if Debtor shall be adjudged a bankrupt or insolvent, or a court of competent jurisdiction shall enter any order, judgment or decree appointing a receiver, trustee, liquidator or conservator of Debtor or of the whole or any substantial part of property of Debtor or approve a petition filed against Debtor seeking reorganization or similar relief under the Federal

C&F: 2059659.1

Bankruptcy Laws or any other applicable law or statue of the United States or any State; or

(d) Under the provisions of any other law for the relief or aid of debtors, a court of competent jurisdiction shall assume custody or control of Debtor, the Collateral or the whole or any substantial part of Debtor's property; or

(e) If any of the foregoing proceedings are commenced against Debtor, or, Debtor indicates its consent to, approval of, or acquiescence in any such proceeding or position; or

(f) If the Pepsi-Cola Bottling Company of N.Y., Inc. ("Pepsi"), for any reason whatsoever hereafter shall accelerate payment in whole or in part of any outstanding obligation owed to it by Debtor, under any agreement or arrangements, or if any judgment by Pepsi against the Debtor or any execution against any of its property for any amount remains unpaid, unstayed or undismissed for a period in excess of ten (10) days; or

(g) If Debtor shall cease to exist; or

(h) If the Debtor undertakes any act that is reasonably likely to materially impact that ability of debtor to fully perform or satisfy the Obligations; or

(i) If Debtor should default, beyond any applicable grace and/or cure periods, on any of the terms and provisions of the Distributor Agreement; or

(j) If Debtor should default on any of the terms and provisions of the Note.

**2.00 Debtor's Representations**. Debtor makes the following representations to the Secured Party:

2.01 Except as set forth in Article 8.00 of the Contract of Sale dealing with a potential withdrawal liability with respect to the obligations of the Secured Party with respect to the Soft Drink and Brewery Local 812 I.B.T. Retirement Fund, the Collateral is free and clear of all security interests, claims, charges, encumbrances, taxes, and assessments.

2.02 Debtor will pay and perform all of the Obligations secured by this Agreement in accordance with the provisions contained herein.

2.03 There exist no offsets, claims or defenses to the Obligations.

2.04 The Collateral is lawfully and solely owned by Debtor.

2.05 Debtor has the power to execute, deliver and perform the provisions of this Agreement and all instruments and documents delivered or to be delivered pursuant hereto, and has taken or caused to be taken all necessary and appropriate actions to authorize the execution, delivery and performance of this Agreement and all such instruments and documents.

2.06 No Default presently exists, and there exists no set of facts or condition known to Debtor, which could be reasonably expected to constitute a Default under this Agreement by Debtor.

**3.00  Protection of the Collateral**. Debtor shall defend the title to the Collateral against all claims and demands.

3.01 Debtor shall keep the Collateral free and clear of all liens, charges, encumbrances, taxes and assessments, other than trade obligations incurred in the ordinary course of business, and shall pay when due, all taxes, assessments and fees relating to the Collateral.

3.02 Debtor shall not use the Collateral in violation of any Distributor Agreement, statute, or ordinance.

3.03 Upon request of the Secured Party, Debtor shall furnish reasonable assurances of title, execute any further instruments, and do any other acts reasonably necessary to effectuate the purposes and provisions of this Agreement.

3.04 Secured Party shall have the right to obtain records from Debtor or relating to any outstanding indebtedness between Debtor and PEPSI-COLA BOTTLING COMPANY OF N.Y., INC., and obtain copies of any writings, agreements or correspondence between Debtor and PEPSI-COLA BOTTLING COMPANY OF N.Y., INC., relating to payments due or promised.

3.05 Except as provided in the Note, Debtor shall not sell, exchange, assign, transfer, hypothecate, mortgage or otherwise dispose of the Collateral, with the exception of transactions in the ordinary course of business.

3.06 Debtor shall keep the Collateral in good repair and condition and shall not misuse, abuse or waste the Collateral, or allow the Collateral to deteriorate except for normal wear and tear.

3.07 Intentionally omitted.

3.08 Intentionally omitted.

3.09 Intentionally omitted.

**4.00  Insurance**. Debtor at all times shall maintain insurance:

4.01 Against liability on account of damage to persons and property in the minimum sum of One Million ($1,000,000.00) Dollars with excess coverage in the

minimum sum of Three Million ($3,000.000.00) Dollars, or in such amounts as required by PEPSI-COLA BOTTLING COMPANY OF N.Y., INC.

4.02  Required pursuant to the worker's compensation laws of the State of New York.

4.03  Covering such other risks as Secured Party may reasonably request.

4.04  Maintained with insurance carriers licensed to do business in the State of New York.

4.05  Naming Secured Party as additional insured, and shall provide for at least ten (10) day notice of cancellation or default to Secured Party.

4.06  Debtor shall from time to time, upon Secured Party's written request, promptly furnish or cause to be furnished to Secured Party evidence of the maintenance of all insurance required hereunder, including such originals or copies of policies, certificates of insurance, riders and endorsements relating thereto, and proof of payment of premiums as Secured Party may request.

4.07  If Debtor fails to maintain any insurance, at the discretion of the Secured Party, the Secured Party may obtain the insurance at the expense of Debtor, and the amount paid by the Secured Party for the insurance shall be deemed an Obligation, subject to the Rights and Remedies as set forth below in paragraphs 6.00-7.00.

4.08  Intentionally omitted.

4.09  The risk of loss of the Collateral at all times shall be borne by Debtor.

4.10  Debtor shall give the Secured Party and the insurers immediate written notice of loss or damage to the Collateral, and shall promptly file proofs of loss with the

insurers, with a copy to the Secured Party of said proof of loss, and all correspondence between Debtor and the insurer.

### 5.00  Filing and Recording.

5.01   Debtor shall execute and deliver to the Secured Party such financing statements, and other documents reasonably necessary or appropriate to protect the Security Interest granted to Secured Party hereunder against the rights and interests of third parties.

5.02   Debtor hereby authorizes the Secured Party to execute in the name of the Debtor financing statements and continuation statements, reasonably necessary or appropriate to protect and preserve the interests of the Secured Party.

5.03   Secured Party shall be entitled to record and file the financing statement and documents referred to in paragraph 5.01.

5.04   In the event that any recording or re-filing thereof (or filing of any statements of continuation or assignment of any financing statement) is required to protect and preserve the Security Interest, Secured Party, at its own cost and expense, shall cause the same to be re-recorded and/or re-filed.

### 6.00  Rights and Remedies.   Upon the occurrence of a Default, the Obligations shall immediately become due and payable in full, if the Default is not cured, stayed, or dismissed for the fifteen (15) days after the Secured Party gives notice of such Default.

6.01   The Secured Party shall have all Rights and Remedies and privileges provided by the Uniform Commercial Code in effect in the State of New York respecting "Default".

6.02  In addition thereto, the Secured Party may:

C&F: 2059659.1

(a) With notice to Debtor, foreclose the Security Interest created herein by any available judicial procedure, or take possession of the Collateral, or any portion thereof, with judicial process, and enter any premises where the Collateral may be located for the purpose of taking possession of or removing the same, or rendering the same unusable, or disposing of the Collateral on such premises, and Debtor agrees not to resist or interfere therewith; and

(b) Require Debtor to prepare, assemble or collect the Collateral, at Debtor's own expense, and make the Collateral available to Secured Party at such time and place as Secured Party may designate in the demand; and

(c) Sell, lease or otherwise dispose of all or any part of the Collateral, whether in its then condition or after further preparation, in Debtor's name or in its own name, or in the name of such party as Secured Party may designate, either at public or private sale (at which Secured Party shall have the right to purchase), in lots or in bulk, for cash or for credit, with or without warranties or representations, and upon such other terms as Secured Party, in its sole discretion, may deem advisable. The Secured Party shall give Debtor ten (10) days written notice of such public sale date or dates, after which private sale may occur, or such lesser period of time in the case of an emergency, shall constitute reasonable notice hereunder; and

(d) Execute and deliver documents of title, certificates of origin, or other evidence of payment, shipment or storage of any Collateral or proceeds on behalf of and in the name of Debtor; and

(d) Remedy any Default by Debtor hereunder, without waiving such Default, and any monies expended in so doing shall be chargeable with interest at the rate of NINE (9%) PERCENT per annum to Debtor and added to the Obligations secured hereby; and

(e) Apply for an injunction to restrain a breach or threatened breach of this Agreement by Debtor.

6.03 Waiver or acquiescence to any Default by the Debtor, or the failure of the Secured Party to insist upon the strict compliance of any provisions of the Note or this Agreement, shall not constitute a waiver of a subsequent Default or failure to comply with the provisions of the Note or this Agreement.

6.04 The Debtor shall remain liable for any deficiency resulting from a sale of the Collateral, and shall pay any such deficiency forthwith upon demand.

**7.00 Cumulative Rights**. All rights, remedies and powers granted to Secured Party herein, or in any instrument or document related hereto, or provided or implied by law or in equity shall be cumulative and may be exercised singly or concurrently, on one or more occasions.

**8.00 Notices**. All notices, requests, demands or other communications provided for herein shall be in writing and shall be deemed to have been given when sent by certified mail, return receipt requested, addressed to the parties at their respective addresses hereinabove set forth, or at such other addresses as the parties may hereinafter designate by written notice. A copy of any notice hereunder shall be sent in the same manner simultaneously to:

C&F: 2059659.1

Debtor: Cuddy & Feder LLP, 445 Hamilton Avenue, 14th Floor, White Plains, New York 10601: Attn: Robert J. Levine, Esq.;

Secured Party: Allan M. Stern, Esq., P.O. Box 823, Glenwood Landing, New York 11577.

8.01 Debtor immediately shall notify Secured Party of any change in the address of Debtor, or discontinuance of the principal place of business of Debtor.

8.02 If Debtor fails to notify the Secured Party of a Default relating to paragraphs 1.04(c) – 1.04(g) within five (5) business days after such Default, the ten (10) day time period shall commence without notice upon the date of such Default.

**9.00  Modification and Waiver**. No modification or waiver of any provision of this Agreement, and no consent by Secured Party to any breach thereof by Debtor, shall be effective unless such modification or waiver shall be in writing, and signed by Secured Party.

9.01 The modification or waiver shall thereafter be effective only for the period and upon the conditions specified in such writing.

9.02 No course of dealing between Debtor and Secured Party in exercising any Rights or Remedies hereunder shall operate as a waiver, or preclude the exercise of any other Rights or Remedies.

9.03 All Rights and Remedies shall continue unimpaired, notwithstanding any delay, extension of time, renewal, or compromise granted with regard to any of the Obligations.

C&F: 2059659.1

**10.00  Applicable Law and Interpretation**.

10.01   This Agreement shall be construed in accordance with and shall be governed by the laws of the State of New York.

10.02   The invalidity or unenforceability of any provision of this Agreement shall not effect the validity or enforceability of any other provision of this Agreement.

10.03   The captions in this Agreement are for convenience and reference, and shall not be used to define, limit, or describe the scope or intent of this Agreement.

10.04   The gender and number used in this Agreement are used for reference term only and shall apply with the same effect whether the parties are masculine, feminine, neuter, singular or plural.

**11.00  Parties Bound by the Security Agreement**.

11.01   This Agreement shall be binding upon and inure to the benefit of the parties hereto, and their respective heirs, executors, administrators, legal representatives, successors and assigns.

11.02   Secured Party may assign this Agreement, and if assigned, the assignee shall be entitled, upon notifying Debtor, to the payment and performance of all of the Obligations and agreements of Debtor hereunder and to all of the Rights and Remedies of Secured Party hereunder.   Debtor will assert no claims or defenses Debtor may have against Secured Party against the assignee.

[Balance of page intentionally left blank.  Signatures follow.]

C&F: 2059659.1

**IN WITNESS WHEREOF,** the parties hereto have duly executed this Agreement on the 27th day of December, 2012.

Dated: White Plains, New York

PBR BEVERAGE INC.                    BUHRE BEVERAGE DIST., INC.

_____              _____
By: BHAVEEN SAPRA, President          By: WILLIAM SANCHEZ, President

STATE OF NEW YORK )
                       ) ss.:

COUNTY OF Westchester)

On the 27 day of December in the year 2012, before me, the undersigned Notary Public in and for the State of New York, personally appeared WILLIAM SANCHEZ, doing business at 650 Brush Avenue, Bronx, New York 10465, to me known, who, being by me duly sworn, did depose and say that he is the President of BUHRE BEVERAGE DIST., INC., the corporation described in and which executed the foregoing instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the board of directors of said corporation, and that he signed his name thereto by like order.

_____
NOTARY PUBLIC

STATE OF NEW YORK )
                       ) ss.:

COUNTY OF WESTCHESTER )

On the 27 day of December in the year 2012, before me, the undersigned Notary Public in and for the State of New York, personally appeared BHAVEENSAPRA, residing at 22 Stony Hollow, Chappaqua, New York 10514, to me known, who, being by me duly sworn, did depose and say that he is the President of PBR BEVERAGE INC., the corporation described in and which executed the foregoing instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the board of directors of said corporation, and that he signed his name thereto by like order.

_____
NOTARY PUBLIC

C&F: 2059659.1

## EXHIBIT A

Distributor Agreement to be executed by and between PBR BEVERAGE INC. and the PEPSI-COLA BOTTLING COMPANY OF N.Y., INC., and pertaining to the Pepsi-Cola distribution territory annexed hereto, and being the same territory as is identified in the aforementioned Distributor Agreement, beverage trucks: 2005 International Harvester V.I.N. 1HTMMAAN74H607626 and 2004 Kenilworth V.I.N. 2NKMLZ9X95M100779, and pertaining to said territory, all of the Debtor's assets, equipment, parts, inventory, accounts receivable and the proceeds derived therefrom, now or hereinafter owned by or due the Debtor. It is acknowledged that the Distributor Agreement annexed is provided for reference purposes only, and that at the COMPANY Closing, as defined in the Contract of Sale executed simultaneously herewith, the PEPSI-COLA BOTTLING COMPANY OF N.Y., INC. will enter into a Distributor Agreement with PBR BEVERAGE INC. in the form then in use. The Distributor Agreement executed at the Company Closing is to be substituted for the annexed Exhibit A.

## BILL OF SALE

KNOW ALL MEN BY THESE PRESENTS,

THAT BUHRE BEVERAGE DIST., INC., a domestic corporation whose principal place of business is located at 650 Brush Avenue, Bronx, New York 10465, the "SELLER", for and in consideration of the sum ONE MILLION ONE HUNDRED SEVENTY-FIVE THOUSAND ($1,175,000.00) DOLLARS, and for other good and valuable consideration received by the SELLER, at or before the delivery of this Bill of Sale to PBR BEVERAGE INC., a New York corporation whose principal place of business is located at 22 Stony Hollow, Chappaqua, New York 10514, the "PURCHASER", has bargained and sold to the PURCHASER, and does grant and convey unto the PURCHASER, subject to the provisions of that certain Contract of Sale dated December 27, 2012, all of its right, title and its interest in and to a certain Distributor Agreement by and between the SELLER and PEPSI COLA BOTTLING COMPANY OF N.Y., INC., and pertaining to the territory set forth in the aforementioned Contract of Sale, incorporated herein by reference. In addition thereto, SELLER conveys its right, title and interest in certain owned and leased equipment and other assets used in the operation of the distributorship, and as identified in the Contract of Sale. The assets hereby conveyed, are set forth on Schedule A, annexed hereto and made a part hereof. The parties acknowledge and agree that Schedule A shall be amended as required by PEPSI COLA BOTTLING COMPANY OF N.Y., INC. as part of the COMPANY Closing.

The SELLER warrants and represents that SELLER knows of no third party or governmental claims, actions or proceedings existing or threatened against SELLER. SELLER further covenants and agrees, to defend the sale of the aforesaid PEPSI COLA BOTTLING COMPANY OF N.Y., INC. Distributor Agreement and the business assets hereby sold to the PURCHASER against all and every person and persons asserting claims against the right, title and interest being conveyed.

SELLER AND ITS PRINCIPAL, WILLIAM SANCHEZ, DO FURTHER COVENANT AND AGREE, jointly and severally, not to re-establish, re-open, be engaged in, or in any manner whatsoever become interested, directly or indirectly, either as employee, as owner, as partner, as agent, or as stockholder, director or officer of a corporation, or otherwise, whether or not for consideration, in any business competitive to the one hereby sold, within the subject territory for a term of two (2) years from the date of this Bill of Sale, unless the SELLER forecloses upon the Security Agreement being executed and delivered simultaneously with this Bill of Sale. ("Restrictive Covenant")

[Balance of page intentionally left blank. Signatures follow.]

IN WITNESS WHEREOF, the SELLER has caused this Bill of Sale to be signed by its authorized corporate officers, and cause its proper corporate seal to be hereto affixed, the 27th day of December, 2012.

BUHRE BEVERAGE DIST., INC.

By: _____
WILLIAM SANCHEZ, President

Restrictive Covenant
Agreed to:

_____
WILLIAM SANCHEZ, Individually

## SCHEDULE A

(All capitalized terms used herein and not otherwise defined
shall have the meanings ascribed thereto in the Contract of Sale).

1.      All right, title and interest in and to the Distributor Agreement and, as it relates
thereto, the Territory.

2.      The marteteers, vending equipment and other assets described in <u>Exhibit C</u> to the
Contract of Sale.

3.      The two vehicles and related equipment as follows:
        a)      2004 International Harvester truck bearing V.I.N.
1HTMMAAN74H607626; and
        b)      2005 Kenilworth van V.I.N. 2NKMLZ9X95M100779

* To be amended in accordance with the terms of the COMPANY Closing.

## AFFIDAVIT

STATE OF NEW YORK     )
                            ) ss.:
COUNTY OF WESTCHESTER )

WILLIAM SANCHEZ, being duly sworn, deposes and says:

That he is the President of BUHRE BEVERAGE DIST., INC., a corporation duly organized and existing under the laws of the State of New York, and having its principal office at 650 Brush Avenue, Bronx, New York 10465.

That the corporation is now the sole owner of all of the goods and chattels described and more specifically enumerated in the schedule hereto annexed and made part of the foregoing Bill of Sale.

That your deponent states that there are no mortgages, liens, conditional sales agreement or other encumbrances of whatever nature or description affecting the said goods and chattels set forth in the foregoing schedule and that they are absolutely free and clear thereof.

That the corporation is not indebted to any one and has no creditors.

That there are no actions pending against the corporation in any court; nor are there any replevins, judgments or executions outstanding against the corporation now in force; nor has any petition in bankruptcy or arrangement proceedings been filed by or against the corporation; nor has the corporation taken advantage of any law relating to insolvency.

That this Affidavit is made for the express purpose and with the intent of inducing PBR BEVERAGE INC. to purchase the property set forth and described in the foregoing Bill of Sale, knowing full well that it will rely upon this Affidavit and pay a good and valuable consideration.

BUHRE BEVERAGE DIST., INC.

By: _____, PRESIDENT
WILLIAM SANCHEZ, President

STATE OF NEW YORK )
                           ) ss.:
COUNTY OF WESTCHESTER )

On the 27th day of December in the year 2012, before the undersigned, a Notary Public in and for said State, personally appeared WILLIAM SANCHEZ, personally known to me or proved to me on the basis of a satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument; that deponent is the President of BUHRE BEVERAGE DIST., INC., the corporation described in, and which executed the foregoing Bill of Sale, that deponent knows the seal of the corporation, that the seal affixed to the Bill of Sale is the corporate seal, that it was affixed by order of the Board of Directors of the corporation; and that deponent signed deponent's name by like order.


NOTARY PUBLIC

TAMI J. ESCOBAR
Notary Public, State of New York
No. 01ES6067372
Qualified in Rockland County
Commission Expires Dec. 10, 20 13

# Motor Vehicle Bill of Sale

BUHRE BEVERAGE DISTRIBUTORS INC. (Seller) hereby sells and transfers to PBR BEVERAGE INC. (Buyer), the following described motor vehicle (Vehicle), for good and valuable consideration, as more particularly described in that certain Contract of Sale between Seller and Buyer of even date herewith, the receipt and sufficiency of which is hereby acknowledged:

| | |
|---|---|
| Make: Kenilworth *w·V.   KENWORTH* | Model or series: Van |
| Year: 2005 | Color: |
| VIN #: 2NKMLZ9X95M100779 | Style: |
| Odometer reading: | Title #: BUHRE BEVERAGE DISTRIBUTORS INC. |

## The sale is subject to the following conditions and representations:

Seller acknowledges receipt of the aforementioned consideration for the Vehicle, representing full payment from the Buyer for the Vehicle and, based on the foregoing, transfer of title to the Vehicle has taken place.

Seller certifies to the best of the Seller's knowledge that the odometer reading listed in the vehicle description above reflects the actual mileage of the Vehicle. The Vehicle's odometer was not altered, set back, or disconnected while in the Seller's possession, and the Seller has no knowledge of anyone doing so.

Seller warrants to Buyer that Seller has good and marketable title to said property, full authority to sell and transfer said property, and that said property is sold free of all liens, encumbrances, liabilities, and adverse claims of every nature and description whatsoever.

Seller warrants to Buyer that the Vehicle has not been involved in any accidents. Seller has no knowledge of any hidden defects in and to the Vehicle, and believes to the best of the Seller's knowledge that the Vehicle being sold is in good operating condition. Said Vehicle is otherwise sold in "as is" condition and where currently located.

| | |
|---|---|
| Date signed: *12/27/2012* | |
| Seller Signature: | |
| | BUHRE BEVERAGE DISTRIBUTORS, INC., by WILLIAM SANCHEZ, PRESIDENT |
| Buyer: | |
| | PBR BEVERAGE INC., BHAVEEN SAPRA, PRESIDENT |
| In the presence of (Witness): | |
| Print name of witness: *Toni J. Escobar* | |

# Motor Vehicle Bill of Sale

BUHRE BEVERAGE DISTRIBUTORS INC. (Seller) hereby sells and transfers to PBR BEVERAGE INC. (Buyer), the following described motor vehicle (Vehicle), for good and valuable consideration, as more particularly described in that certain Contract of Sale between Seller and Buyer of even date herewith, the receipt and sufficiency of which is hereby acknowledged:

| | |
|---|---|
| Make: INTERNATIONAL HARVESTER | Model or series: TRUCK |
| Year: 2004 | Color: |
| VIN #: 1HTMMAAN74H607626 | Style: |
| Odometer reading: | Title #: BUHRE BEVERAGE DISTRIBUTORS INC. |

## The sale is subject to the following conditions and representations:

Seller acknowledges receipt of the aforementioned consideration for the Vehicle, representing full payment from the Buyer for the Vehicle (except as noted below) and, based on the foregoing, transfer of title to the Vehicle has taken place.

Seller certifies to the best of the Seller's knowledge that the odometer reading listed in the vehicle description above reflects the actual mileage of the Vehicle. The Vehicle's odometer was not altered, set back, or disconnected while in the Seller's possession, and the Seller has no knowledge of anyone doing so.

Seller warrants to Buyer that Seller has good and marketable title to said property, full authority to sell and transfer said property, and that said property is sold free of all liens, encumbrances, liabilities, and adverse claims of every nature and description whatsoever, other than that certain automobile financing arrangement in the approximate sum of $15,000, which Buyer has agreed to assume.

Seller warrants to Buyer that the Vehicle has not been involved in any accidents. Seller has no knowledge of any hidden defects in and to the Vehicle, and believes to the best of the Seller's knowledge that the Vehicle being sold is in good operating condition. Said Vehicle is otherwise sold in "as is" condition and where currently located.

| | |
|---|---|
| Date signed: *12/27/2012* | |
| Seller Signature: *[signature]* | |
| BUHRE BEVERAGE DISTRIBUTORS, INC., by WILLIAM SANCHEZ, PRESIDENT | |
| Buyer: *[signature]* | |
| PBR BEVERAGE INC., BHAVEEN SAPRA, PRESIDENT | |
| In the presence of (Witness): *[signature]* | |
| Print name of witness: *Tami J. Escobar* | |

# MEETING OF THE BOARD OF DIRECTORS
## OF

### BUHRE BEVERAGE DIST., INC.

As permitted under the bylaws BUHRE BEVERAGE DIST., INC. (the"Company") and in accordance with the provisions of state law under which the Company was incorporated, on December 27, 2012 there was a duly constituted meeting of the Board of Directors.

William Sanchez, the sole officer and director approved the sale of a certain Pepsi-Cola distribution territory, as well as related assets, to PBR Beverage Inc. ("PBR") pursuant to the terms specified in that certain Contract of Sale between the Company and PBR. Upon the vote of William Sanchez, the Company authorized William Sanchez to negotiate, execute, deliver and perform the Contract of Sale and all other documents (collectively, the "Transaction Documents") reasonably necessary to sell the distribution territory and related assets of the Company to PBR.

The Transaction Documents shall be in such form as William Sanchez shall deem necessary, and the signature of William Sanchez shall constitute conclusive evidence of the Company's agreement to such documents.

Furthermore, all actions heretofore taken by William Sanchez for and on behalf of the Company in connection with the foregoing are hereby authorized, ratified and confirmed in all respects.

The undersigned hereby certifies to being duly authorized, as permitted under the bylaws of the Company to prepare these minutes of the meeting of the Board of Directors, and to certify that these minutes accurately reflect the actions of the Board.

IN WITNESS WHEREOF, I have subscribed my signature, on this 27th day of December, 2012.


WILLIAM SANCHEZ
President/Secretary