UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
WHITE PLAINS
----------------------------------------------------------------X
In re:

Chapter 11

BUHRE BEVERAGE DISTRIBUTION, INC.,

Case No. 14-22048-rdd

Debtor.
----------------------------------------------------------------X
WILLIAM SANCHEZ,

Plaintiff,        Adv. Pro. No.: 14-08218-rdd

-against-

BUHRE BEVERAGE DISTRIBUTION, INC.,
BHAVEEN SAPRA and BRUCKNER BEVERAGE, INC.,

Defendants.
----------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 7056

LAW OFFICE OF MICHAEL G. MC AULIFFE
Counsel to the Plaintiff William Sanchez
68 South Service Road, Suite 100
Melville, New York 11747
(631) 465-0044

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION 1

FACTUAL BACKGROUND 2

ARGUMENT 2

I.     APPLICABLE LAW AS TO SUMMARY JUDGMENT GENERALLY 2

II.    THE COURT SHOULD GRANT SUMMARY JUDGMENT IN
FAVOR OF THE PLAINTIFF ON THE FIRST CLAIM FOR
RELIEF SET FORTH IN THE COMPLAINT 4

      A.      The Court Should Reform the Inaccurate Documents to
Reflect the True Intent of the Parties 4

      B.      Reformation is Permissible in this Bankruptcy Case,
as the Stong-Arm Provision Set Forth in 11 U.S.C. Section
544(a) is Defeated by the Notice Provided by the UCC-1
and the UCC-3 Amendment 10

      C.      The Debtor Should Be Equitably Estopped From Disputing
Sanchez's Valid Security Interest in the Debtor and its Assets 11

III.   THE COURT SHOULD GRANT SUMMARY JUDGMENT IN
FAVOR OF THE PLAINTIFF ON THE THIRD CLAIM FOR
RELIEF SET FORTH IN THE COMPLAINT 13

IV.    THE COURT SHOULD DISMISS THE DEFENDANTS'
AFFIRMATIVE DEFENSES 15

CONCLUSION 17

# TABLE OF AUTHORITIES

Page

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 106 S.Ct. 2505 (1986)                                          1

Celotex Corp. v. Catrett,
477 U.S. 317, 106 S.Ct. 2548 (1986)                                          1

Lendino v. Trans Union Credit Information Co.,
970 F.2d 1110 (2d Cir. 1992)                                                 1

In re Finley, Kumble, Wagner, Heine, et al.,
160 B.R. 882, 888 (Bankr. S.D.N.Y. 1993)                                     3

In re Drexel Burnham Lambert Group, Inc.,
138 B.R. 687, 694 (Bankr. S.D.N.Y. 1992)                                     3

United Nat. Ins. Co. v. Tunnel, Inc., 988 F.2d 351, 355 (2d Cir. 1993)       3

In re Martin, 138 B.R. 508, 510 (Bankr. E.D. Va. 1992)                       3

Matsushita Elec. Ind. Co. v. Zenith Radio Corp, 475 U.S. 547, 586 (1986)     3

Fitch v. R.J. Reynolds Tobacco Co., 675 F.Supp. 133, 136 (S.D.N.Y.1987)      3

J.T. Morgan Financial Corp, 124 B.R 926                                      4

In re Suburban Motor Freight, Inc., 124 B.R. at 992                          4

In re Wedtech Corp., 165 B.R. 140 (Bankr. S.D.N.Y. 1994)                     4

John John, LLC v Exit 63 Dev., LLC, 35 AD3d 540, 826 NYS2d 657 [2006]        4

Beebe v La Pierre, 114 AD2d 668, 669, 494 NYS2d 225 [1985])                  4

M.S.B. Development Company, Inc. v. Lopes,
38 A.D.3d 723, 725, 832 N.Y.S.2d 95 (N.Y.A.D. 2nd Dept. 2007)                4

See also Kaliontzakis v. Papadakos,
69 A.D.3d 803, 804, 892 N.Y.S.2d 542 (N.Y.A.D. 2nd Dept. 2010)               4

U.S. Bank National Association v. Lieberman,
98 A.D.3d 422, 423-424, 950 N.Y.S.2d 127 (N.Y.A.D. 1st Dept. 2012)           4

Winmar Co., Inc. v. Teachers Ins. and Annuity Ass'n of America,
870 F. Supp. 524, 535 (S.D.N.Y. 1994)                                          5

Chimart Assocs. v. Paul,
66 N.Y.2d 570, 489 N.E.2d 231, 498 N.Y.S.2d 344 (N.Y. 1986))                    5

American Home Assurance Company v. Merck & Co. Inc.,
329 F. Supp. 2d 436, 444 (S.D.N.Y. 2004)                                        5

M.S.B. Dev. Co., Inc. v Lopes,
38 AD3d 723, 725, 832 NYS2d 95 [2007];

Matthews v Castro, 35 AD3d 403, 404, 830 NYS2d 154 [2006];                      5

Kadish Pharm. v Blue Cross & Blue Shield of Greater N.Y.,
114 AD2d 439, 494 NYS2d 354 [1985]                                             5

Janowitz Bros. Venture v 25-30 120th St. Queens Corp.,
75 AD2d 203, 215, 429 NYS2d 215 [1980])."                                      5

Yu Han Young v. Chiu,
49 A.D.3d 535, 535-536, 853 N.Y.S.2d 575 (N.Y.A.D. 2nd Dept. 2008).            5

Brandwein v Provident Mut. Life Ins. Co.,
3 NY2d 491, 496; but see, Friedman & Co v Newman, 255 NY 340).                 6

True v. True,
63 A.D.3d 1145, 1147, 882 N.Y.S.2d 261 (N.Y.A.D. 2nd Dept. 2009);              6

West Vernon Petroleum Corp. v. Singer,
103 A.D.3d 627, 629-630, 959 N.Y.S.2d 249 (N.Y.A.D. 2nd Dept. 2013)            6

Backer Mgt. Corp. v Acme Quilting Co., at p 219, supra)                        9

In re Canney, 284 F.3d 362, 374 (2d Cir. 2002)                                10

In re Reasonover, 236 B.R. 219, 230 (Bankr. E.D. Va. 1999)                    10

In re R.F. Cunningham & Co., 355 B.R. 408, 418, 2006 Bankr.
LEXIS 3340 (Bankr. E.D.N.Y. 2006).                                            10

Richart v. Jackson, 171 Vt. 94, 97-98, 758 A.2d 319 (Vt. 2000).               10

Sensenich v. Bank of America, N.A. (In re Swartz),
2014 Bankr. LEXIS 2838, 12-13, 2014 WL 2965329, 12-13 (Bankr. D. Vt. 2014).   11

In re Euro-Swiss 33 B.R. at 882 (Bankr.S.D.N.Y. 1983), citing                11

Andy Assoc., 49 N.Y.2d 13;                                                    11

Wardell v. Older, 70 A.D.2d 1008, 418 N.Y.S.2d 196 (1979)                     11

In re Hardway, 31 B.R. at 322.                                                11

O'Connell v. JPMorgan Chase Bank National Association,
2012 U.S. Dist. LEXIS 175388, 8 (E.D.N.Y. 2012).                             11

Triple Cities Constr. Co. v Maryland Cas. Co., 4 NY2d 443, 448;              12

Lynn v Lynn, 302 NY 193, 205;                                                12

Metropolitan Life Ins. Co. v Childs Co., 230 NY 285, 292                     12

White v La Due & Fitch, 303 NY 122, 128)."                                   12

Nassau Trust Co. v. Montrose Concrete Products Corp.,
56 N.Y.2d 175, 184, 436 N.E.2d 1265 (N.Y. Ct. of Appeals 1982).             12

Ettore I. V. Angela D.,
127 A.D.2d 6, 12, 513 N.Y.S.2d 733 (N.Y.A.D. 2nd Dept. 1987).               12

Romano v. Metropolitan Life Ins. Co.,
271 N. Y. 288, 293; see, also                                                13

Syracuse Light. Co. v. Maryland Cas. Co., 226 N. Y. 25, 36.)"               13

Triple Cities Construction Co. v. Maryland Casualty Co.,
4 N.Y.2d 443, 448, 151 N.E.2d 856 (N.Y. Ct. of Appeals 1958).              13

Orchard Hotel, LLC v. D.A.B. Group, LLC,
43 Misc. 3d 1201(A), 986 N.Y.S.2d 866 (N.Y. Sup. 2014).                    13

Dayan Enterprises Corp. v. Nautica Apparel, Inc.,
2003 U.S. Dist. LEXIS 21344, 1-2, 2003 WL 22832706, 1-2 (S.D.N.Y. 2003).   13

Booth Oil Site Administrative Group v. Safety-Kleen Corporation,
532 F. Supp. 2d 477, 517 (W.D.N.Y. 2007).                                  13

City of New York v. State of New York,

40 N.Y.2d 659, 669, 357 N.E.2d 988, 389 N.Y.S.2d 332 (N.Y. Ct. of Appeals 1976).    15

Silverman v. Silverman,
     304 A.D.2d 41, 46, 756 N.Y.S.2d 14 (N.Y.A.D. 1st Dept. 2003);    15

Ulster Savings Bank v. Kizelnik (In re Kizelnik),
190 B.R. 171, 180 (Bankr. S.D.N.Y. 1995).    15

O'Donnell v. Kelsey, 10 N.Y. 412, 419 (N.Y. Ct. of Appeals 1852).    17

Muraca v. Meyerowitz, 13 Misc. 3d 348, 353, 818 N.Y.S.2d 450 (N.Y. Sup. 2006).    17

## FEDERAL STATUTES AND REGULATIONS

Federal Rule of Bankruptcy Procedure 7056    1

Federal Rule of Civil Procedure 56    1

11 U.S.C. §§ 544(a)(1)    10

11 U.S.C. §§ 1107(a)    10

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
WHITE PLAINS
-----------------------------------------------------------------X
In re:

BUHRE BEVERAGE DISTRIBUTION, INC.,

Chapter 11

Case No. 14-22048-rdd

Debtor.
-----------------------------------------------------------------X

WILLIAM SANCHEZ,

      Plaintiff,      Adv. Pro. No.: 14-08218-rdd

  -against-

BUHRE BEVERAGE DISTRIBUTION, INC.,
BHAVEEN SAPRA and BRUCKNER BEVERAGE, INC.,

      Defendants.
-----------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 7056

### INTRODUCTION

  WILLIAM SANCHEZ (alternatively, "Sanchez" and the "Plaintiff"), the Plaintiff in this adversary proceeding, by and through his counsel, the Law Office of Michael G. Mc Auliffe, Esq., hereby respectfully submits this Memorandum of Law in Support of Plaintiff's Motion seeking the entry of an order: (a) pursuant to Federal Rule of Bankruptcy Procedure ("FRBP") 7056 and Federal Rule of Civil Procedure ("FRCP") 56 granting summary judgment against BUHRE BEVERAGE DISTRIBUTION, INC. (alternatively, "Buhre" and the "Debtor"), BHAVEEN SAPRA ("B. Sapra"), and BRUCKNER BEVERAGE, INC. ("Bruckner")

(collectively, the "Defendants")[1] , the Defendants herein, on the first and third claims for relief in the Plaintiff's complaint in this adversary proceeding; and (b); granting the Plaintiff such other, and further relief as the Court deems to be just and proper under the circumstances.

It is respectfully submitted that, as will be set forth in detail below, applicable law provides that the relief requested in the first and third claims for relief contained in the Plaintiff's Complaint should be granted in their entirety.

## FACTUAL BACKGROUND

The relevant facts are reviewed in detail in the Plaintiff's Statement under Local · Bankruptcy Rule 7056-1 in Support of its Motion for Summary Judgment (the "7056-1 Statement") which is being submitted with this Memorandum of Law, in support of the Plaintiff's Motion for Summary Judgment herein.

Capitalized terms used in this Memorandum, unless specifically defined herein, shall have the same definitions given for them in the 7056-1Statement.

## ARGUMENT

### I.  APPLICABLE LAW AS TO SUMMARY JUDGMENT, GENERALLY

Pursuant to FRCP 56 and FRBP 7056, summary judgment is to be granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548 (1986); Lendino v. Trans Union Credit Information Co.,

---

[1]     PEPSI-COLA BOTTLING COMPANY OF NEW YORK, INC. ("Pepsi") was originally a defendant in this adversary proceeding, but the adversary proceeding was dismissed as against Pepsi, with prejudice, pursuant to a Stipulation between Sanchez and Pepsi which was "so ordered" by this Court on July 24, 2014.

970 F.2d 1110 (2d Cir. 1992); In re Finley, Kumble, Wagner, Heine, et al., 160 B.R. 882, 888 (Bankr. S.D.N.Y. 1993); In re Drexel Burnham Lambert Group, Inc., 138 B.R. 687, 694 (Bankr. S.D.N.Y. 1992). As explained by the Second Circuit Court of Appeals, "[summary judgment is a tool to winnow out from the trial calendar those cases whose facts predestine them to result in a directed verdict" for the movant. United Nat. Ins. Co. v. Tunnel, Inc., 988 F.2d 351, 355 (2d Cir. 1993). It is an integral part of the Federal Rules of Civil Procedure "... which are designed to secure a just, speedy, and inexpensive determination of every action". In re Martin, 138 B.R. 508, 510 (Bankr. E.D. Va. 1992).

The Court's task when considering a summary judgment motion is not to "weigh the evidence and determine the truth of the matter but [to] determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). To defeat a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Ind. Co. v. Zenith Radio Corp, 475 U.S. 547, 586 (1986). The nonmoving party "must present concrete particulars and cannot succeed with purely conclusory allegations." Fitch v. R.J. Reynolds Tobacco Co., 675 F.Supp. 133, 136 (S.D.N.Y.1987). There is no issue for trial unless there exists sufficient evidence in the record favoring the party opposing summary judgment to support a jury verdict in that party's favor. Anderson, 477 U.S. at 249. As the Supreme Court held in Anderson, supra, "if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50.

The papers which may be reviewed by the Court in considering summary judgment motions include not only the pleadings, but also depositions and other examinations, answers to

3

interrogatories, requests for admission and other discovery, and affidavits submitted in connection with the motion. FRCP 56(c); J.T. Morgan Financial Corp, 124 B.R 926; In re Suburban Motor Freight, Inc., 124 B.R. at 992; In re Wedtech Corp., 165 B.R. 140 (Bankr. S.D.N.Y. 1994).

As set forth below, it is respectfully submitted that the facts alleged in the Complaint, the 7056-1 Statement and the exhibits annexed thereto, establish that the Plaintiff is entitled to summary judgment in his favor granting the relief sought in the first and third claims for relief set forth in the Plaintiff's complaint herein.

## II. THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF THE PLAINTIFF ON THE FIRST CLAIM FOR RELIEF SET FORTH IN THE COMPLAINT

### A. The Court Should Reform the Inaccurate Documents to Reflect the True Intent of the Parties

It is well settled that "[t]he purpose of reformation is to restate the intended terms of an agreement when the writing that memorializes the agreement is at variance with the intent of both parties (see John John, LLC v Exit 63 Dev., LLC, 35 AD3d 540, 826 NYS2d 657 [2006]; Beebe v La Pierre, 114 AD2d 668, 669, 494 NYS2d 225 [1985])." M.S.B. Development Company, Inc. v. Lopes, 38 A.D.3d 723, 725, 832 N.Y.S.2d 95 (N.Y.A.D. 2nd Dept. 2007). See also Kaliontzakis v. Papadakos, 69 A.D.3d 803, 804, 892 N.Y.S.2d 542 (N.Y.A.D. 2nd Dept. 2010); U.S. Bank National Association v. Lieberman, 98 A.D.3d 422, 423-424, 950 N.Y.S.2d 127 (N.Y.A.D. 1st Dept. 2012).

"Under New York law, reformation may be granted in only two circumstances: where

4

there has been (1) a mutual mistake, or (2) unilateral mistake coupled with fraudulent concealment by the knowing party. See Winmar Co., Inc. v. Teachers Ins. and Annuity Ass'n of America, 870 F. Supp. 524, 535 (S.D.N.Y. 1994) (citing Chimart Assocs. v. Paul, 66 N.Y.2d 570, 489 N.E.2d 231, 498 N.Y.S.2d 344 (N.Y. 1986))." American Home Assurance Company v. Merck & Co, Inc., 329 F. Supp. 2d 436, 444 (S.D.N.Y. 2004).

"A party seeking reformation of a contract by reason of mistake must establish, with clear and convincing evidence, that the contract was executed under mutual mistake or a unilateral mistake induced by the other party's fraudulent misrepresentation (see M.S.B. Dev. Co., Inc. v Lopes, 38 AD3d 723, 725, 832 NYS2d 95 [2007]; Matthews v Castro, 35 AD3d 403, 404, 830 NYS2d 154 [2006]; Kadish Pharm. v Blue Cross & Blue Shield of Greater N.Y., 114 AD2d 439, 494 NYS2d 354 [1985]; Janowitz Bros. Venture v 25-30 120th St. Queens Corp., 75 AD2d 203, 215, 429 NYS2d 215 [1980])." Yu Han Young v. Chiu, 49 A.D.3d 535, 535-536, 853 N.Y.S.2d 575 (N.Y.A.D. 2nd Dept. 2008). See also, U.S. Bank National Association v. Lieberman, 98 A.D.3d 422, 423-424, 950 N.Y.S.2d 127 (N.Y.A.D. 1st Dept. 2012).

Here, it is clear that the Inaccurate Documents were executed under the mutual mistake of both parties, being Sanchez and B. Sapra. The Agreed-Upon Transaction reflected the true intent of the parties, which was that Sanchez would sell the shares of stock in Buhre, together with all of its assets, to Bruckner (B. Sapra's corporation) for $1,153,000.00, that Sanchez would take back two promissory notes from Bruckner, one in the sum of $900,000.00 and the other in the sum of $78,000.00, and that the payment of the monies due under the promissory notes to Sanchez would be secured by Sanchez's security interest in the shares of stock in Buhre, Buhre's distributor agreement with Pepsi regarding the Buhre Pepsi Route (and later the distributor

5

agreement between Bruckner and Pepsi that would take over the Buhre Pepsi Route, once B. Sapra satisfied the conditions necessary to obtain such agreement), together with all other tangible and intangible assets of Buhre and Brucker.

The evidence regarding the true intent of the parties regarding the Agreed-Upon Transaction, and the mutual mistake regarding the Inaccurate Documents which improperly effectuated same, is overwhelming.

It is well settled that "[b]ecause the thrust of a reformation claim is that a writing does not set forth the actual agreement of the parties, generally neither the parol evidence rule nor the Statute of Frauds applies to bar proof, in the form of parol or extrinsic evidence, of the claimed agreement (see, Brandwein v Provident Mut. Life Ins. Co., 3 NY2d 491, 496; but see, Friedman & Co. v Newman, 255 NY 340)." Chimart Associates v. Paul, 66 N.Y.2d 570, 573, 489 N.E.2d 231, 498 N.Y.S.2d 344 (NY Ct. of Appeals 1986). See also True v. True, 63 A.D.3d 1145, 1147, 882 N.Y.S.2d 261 (N.Y.A.D. 2nd Dept. 2009); West Vernon Petroleum Corp. v. Singer, 103 A.D.3d 627, 629-630, 959 N.Y.S.2d 249 (N.Y.A.D. 2nd Dept. 2013).

Initially, as the Agreed-Upon Transaction was originally "papered" as a sale of Buhre's assets to B. Sapra's corporation as set forth in the 2012 Documents, it is likely that most of the mistakes that occurred in the Inaccurate Documents were a result of a less-than careful reworking of the 2012 Documents into the Inaccurate Documents in an attempt to properly effectuate the Agreed-Upon Transaction. For example, the intent of the parties regarding the Agreed-Upon Transaction can be gleaned from a review of the Inaccurate Documents themselves as a whole, as follows:

6

- The July 2013 Contract properly reflects Sanchez as "seller" and "Bruckner" as purchaser;

- The Bill of Sale properly lists Sanchez as the "seller";

- While the 2013 Security Agreement improperly lists Buhre as the "secured party", it was correctly executed by Sanchez, individually. (The 2012 Documents properly listed Buhre as the secured party in the security agreement, as under that transaction, Sanchez was maintaining ownership of Buhre.);

- While the $900k Promissory Note improperly lists Buhre as the "payee", the $78k Promissory Note properly lists the "payee" as Sanchez. (The 2012 Documents properly listed Buhre as the payee on the promissory note for $900,000.00, as under that transaction, Sanchez was maintaining ownership of Buhre.);

Thus, it is respectfully submitted that the improper "secured party" on the 2013 Security Agreement and the improper "payee" on the $900k Promissory Note were mistakes made due to the less-than careful reworking of the 2012 Documents to effectuate the Agreed-Upon Transaction.

As set forth fully above, and as confirmed in both the Sanchez Affidavit and the Stern Affidavit, it was the true intent of the parties regarding the Agreed-Upon Transaction that Sanchez would hold a security interest in the shares of Buhre and all of it's tangible and intangible assets, including the Buhre Pepsi Route which was initially held under the distributor agreement between Buhre and Pepsi, and would later be held under a distributor agreement between Bruckner and Pepsi (once B. Sapra was able to obtain same). Unfortunately, the collateral description contained at section 1.01 of the 2013 Security Agreement and at item number 8 on the UCC-3 Amendment did not accurately reflect Sanchez' security interest arising

under the Agreed-Upon Transaction.

As attested to in the Stern Affidavit, the following collateral description fully and fairly reflects the intent of the parties regarding Sanchez' security interest under the Agreed-Upon Transaction:

> A certain distributorship agreement by and between Pepsi-Cola Bottling Company of New York, Inc., Buhre Beverage Dist., Inc. and William Sanchez, and all of the sales proceeds, and other assets associated with the performance of the distributor agreement including a 2004 International Harvester truck bearing VIN 1HTMMAAN74H607626, a 2005 Kenilworth van VIN 2NKMLZ9X95M100779, miscellaneous hand trucks and computer records related to the distributorship, and the shares of Buhre Beverage Dist., Inc. conveyed by a security agreement dated July 31, 2013.

In addition to the sworn Affidavits of both Sanchez and Stern, the true intent of the parties regarding the Agreed-Upon Transaction has been repeatedly confirmed by the Debtor in this case. First, as set forth above, the Debtor's schedules, _sworn to under oath_ by B. Sapra, list Sanchez as a secured creditor on Schedule "D". The Debtor's Schedule "D" lists the obligation to Sanchez as being secured by a UCC filed in August of 2013 giving Sanchez a security interest in the Debtor's stock and two vehicles. While the Debtor's Schedule "D" lists the secured obligation to Sanchez as "disputed" it is respectfully submitted that the listing as "disputed" referred to something other than secured status (such as amount), as if the Debtor truly believed that Sanchez was an unsecured creditor, the obligation would have been listed on Schedule "F". Moreover, as of the date of this Memorandum, the Debtor has not amended its Schedule "D" or objected to the secured proof of claim filed by Sanchez herein, as is confirmed by a review of the Court Docket for this case.

Additionally, the Debtor's Prior Motion papers, and Penachio Affirmation submitted

8

therewith, repeatedly refer to Sanchez as the secured creditor of the Debtor and recognize his

security interest in the Debtor and its assets. Nowhere in the Debtor's Prior Motion papers or the

Penachio Affirmation does the Debtor contradict Sachez' status as a secured creditor.

Specifically, paragraph 4 of the Debtor's Prior Motion states, in pertinent part, that:

> Sapra was obliged to satisfy the balance of the purchase price in installments
> pursuant to a note. Amounts due to Sanchez under the note were secured by the
> stock and assets of the Debtor.

Paragraph 6 of the Debtor's Prior Motion states, in pertinent part, that:

> On or about August 8, 2013, Sanchez filed a UCC financing statement with the
> New York Security [sic] of State. He asserted a lien on the stock of Bruckner and
> the assets of Buhre. Sanchez filed an amendment to the UCC financing statement
> on or about November 27, 2013 wherein he describes the collateral to include the
> distribution agreement between Buhre and Pepsi Bottling, vehicles, certain
> equipment, inventory and accounts receivable.

Paragraph 4 of the Penachio Affirmation states, in pertinent part, that:

> Sapra was obliged to satisfy the balance of the purchase price in installment
> pursuant to a note. Amount due to Sanchez under the note were secured by the
> stock and assets of the Debtor.

"The proponent of reformation must "show in no uncertain terms, not only that mistake or

fraud exists, but exactly what was really agreed upon between the parties" (Backer Mgt. Corp. v

Acme Quilting Co., at p 219, supra)." Chimart Associates v. Paul, 66 N.Y.2d 570, 573, 489

N.E.2d 231, 498 N.Y.S.2d 344 (NY Ct. of Appeals 1986).

Here, it is respectfully submitted that Sanchez has clearly evidenced that the errors in the

Inaccurate Documents were the result of the mutual mistake of the parties. In fact, it was clear

that the Debtor and its counsel were not even aware of such mistakes until they were pointed out

at the hearing on the Debtor's Prior Motion.

By virtue of the foregoing, Sanchez has provided clear and convincing evidence of the parties true intent regarding the Agreed-Upon Transaction and the mutual mistake of the parties with regard to the Inaccurate Documents. As such, it is respectfully submitted that applicable law provides that the Inaccurate Documents should be reformed as sought in the Plaintiff's Complaint..

**B.     Reformation is Permissible in this Bankruptcy Case, as the Stong-Arm Provision Set Forth in 11 U.S.C. Section 544(a) is Defeated by the Notice Provided by the UCC-1 and the UCC-3 Amendment**

"Under 11 U.S.C. §§ 544(a)(1), a debtor in possession (vested with the powers of a trustee by 11 U.S.C. §§ 1107(a)) has the so-called "strong arm power" to cut off unperfected security interests such as secret liens. As observed by the Court of Appeals for the Second Circuit, the "purpose of the 'strong arm clause' is to cut off unperfected security interests, secret liens and undisclosed prepetition claims against the Debtor's property as of the commencement of the case." In re Canney, 284 F.3d 362, 374 (2d Cir. 2002) (citation omitted); see also In re Reasonover, 236 B.R. 219, 230 (Bankr. E.D. Va. 1999) ("trustee's strong-arm powers are meant in part to avoid 'secret liens' which take away from unsecured creditors")." In re R.F. Cunningham & Co., 355 B.R. 408, 418, 2006 Bankr. LEXIS 3340 (Bankr. E.D.N.Y. 2006).

"[A] trustee's claim under §§ 544(a) may be defeated where the trustee is on inquiry notice of the creditor's lien. Inquiry notice is a form of constructive notice, where a person has actual or constructive knowledge of facts that would lead a reasonably prudent person to suspect that another person might have an interest in the property, and therefore obligate that person to conduct a further investigation into the facts. Davis, 109 B.R. at 639; Richart v. Jackson, 171 Vt.

10

94, 97-98, 758 A.2d 319 (Vt. 2000)." <u>Sensenich v. Bank of America, N.A. (In re Swartz)</u>, 2014

Bankr. LEXIS 2838, 12-13, 2014 WL 2965329, 12-13 (Bankr. D. Vt. 2014).

" In New York, findings of constructive notice are made by an examination of record

evidence showing a party's actual awareness of facts that would create a duty of reasonable

inquiry, given all the circumstances. See <u>In re Euro-Swiss</u> 33 B.R. at 882 (Bankr.S.D.N.Y. 1983),

citing <u>Andy Assoc.</u>, 49 N.Y.2d 13; <u>Wardell v. Older</u>, 70 A.D.2d 1008, 418 N.Y.S.2d 196 (1979);

<u>In re Hardway</u>, 31 B.R. at 322." <u>O'Connell v. JPMorgan Chase Bank National Association</u>, 2012

U.S. Dist. LEXIS 175388, 8 (E.D.N.Y. 2012).

Here, the Debtor (acting as Trustee under Section 1107) was clearly on inquiry notice

regarding Sanchez's lien against it's property. The UCC-1 filed by Sanchez clearly lists the

Debtor as the "debtor" and Sanchez as the "secured party" with a security interest in the assets of

Buhre Beverage Distribution, Inc. Thereafter, UCC-3 Amendment restated the collateral (albeit

imperfectly) by adding a more detailed description of the Debtor's assets that are subject to

Sanchez's security interest.

It is respectfully submitted that any reasonably prudent person who reviewed the properly

recorded UCC-1 and the UCC-3 Amendment would be on notice of Sanchez's security interest in

the Debtor's assets. As such, applicable law provides that any potential claim under 11 U.S.C.

Section 544(a) is defeated.

**C.      The Debtor Should Be Equitably Estopped From Disputing Sanchez' Valid Security
Interest in the Debtor and its Assets**

As has been fully demonstrated above, it was the clear and unambiguous intent of the

parties here to enter into the Agreed-Upon Transaction, which included, *inter alia*, Sanchez'

11

security interest in the Debtor and all of its assets. This intention was confirmed, in writing, over and over again by the Debtor both prior to and during this Chapter 11 case. As such, it is respectfully submitted that the Debtor should be estopped from disputing Sanchez' valid security interest.

"An estoppel "'rests upon the word or deed of one party upon which another rightfully relies and so relying changes his position to his injury'" ( Triple Cities Constr. Co. v Maryland Cas. Co., 4 NY2d 443, 448; Lynn v Lynn, 302 NY 193, 205; Metropolitan Life Ins. Co. v Childs Co., 230 NY 285, 292). It is imposed by law in the interest of fairness to prevent the enforcement of rights which would work fraud or injustice upon the person against whom enforcement is sought and who, in justifiable reliance upon the opposing party's words or conduct, has been misled into acting upon the belief that such enforcement would not be sought ( White v La Due & Fitch, 303 NY 122, 128)." Nassau Trust Co. v. Montrose Concrete Products Corp., 56 N.Y.2d 175, 184, 436 N.E.2d 1265 (N.Y. Ct. of Appeals 1982). See also, Ettore I. V. Angela D., 127 A.D.2d 6, 12, 513 N.Y.S.2d 733 (N.Y.A.D. 2nd Dept. 1987).

"An estoppel defense may also be invoked where the failure to promptly assert a right has given rise to circumstances rendering it inequitable to permit the exercise of the right after a lapse of time (see, 57 NY Jur 2d, Estoppel, Ratification, and Waiver, §§ 27)." Ettore I. V. Angela D., 127 A.D.2d 6, 12, 513 N.Y.S.2d 733 (N.Y.A.D. 2nd Dept. 1987).

Here, Sanchez justifiably relied on the agreement he made with B. Sapra regarding the terms of the Agreed-Upon Transaction, and as a result thereof, signed over his rights to the Buhre Pepsi Route and all of Buhre's other assets, and gave B. Sapra the keys to the business. Subsequent to the transfer, the Debtor repeatedly described Sanchez as the secured creditor and

filed it's bankruptcy schedules, *under oath*, listing Sanchez as its secured creditor. B. Sapra and the Debtor cannot now disavow the terms of the Agree-Upon Transaction and claim that Sanchez has no security interest, as to do so would surely effectuate a fraud and an injustice upon Sanchez.

Moreover, it is well settled that ""[a] party may not, even innocently, mislead an opponent and then claim the benefit of his deception." ( Romano v. Metropolitan Life Ins. Co., 271 N. Y. 288, 293; see, also, Syracuse Light. Co. v. Maryland Cas. Co., 226 N. Y. 25, 36.)" Triple Cities Construction Co. v. Maryland Casualty Co., 4 N.Y.2d 443, 448, 151 N.E.2d 856 (N.Y. Ct. of Appeals 1958). See also Orchard Hotel, LLC v. D.A.B. Group, LLC, 43 Misc. 3d 1201(A), 986 N.Y.S.2d 866 (N.Y. Sup. 2014).

By virtue of the foregoing, it is respectfully submitted that the Debtor and B. Sapra be deemed to be equitably estopped from disputing Sanchez's valid security interest in the Debtor and its assets.

## III.    THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF THE PLAINTIFF ON THE THIRD CLAIM FOR RELIEF SET FORTH IN THE COMPLAINT

"In order to sustain an action for accounting under New York law a party must establish four elements: "(1) relations of a mutual and confidential nature; (2) money or property entrusted to the defendant imposing upon him a burden of accounting; (3) that there is no adequate legal remedy; and (4) in some cases, a demand for an accounting and a refusal." Pressman v. Estate of Steinvorth, 860 F. Supp. 171, 179 (S.D.N.Y. 1994)." Dayan Enterprises Corp. v. Nautica Apparel, Inc., 2003 U.S. Dist. LEXIS 21344, 1-2, 2003 WL 22832706, 1-2 (S.D.N.Y. 2003). See also Booth Oil Site Administrative Group v. Safety-Kleen Corporation, 532 F. Supp. 2d 477, 517 (W.D.N.Y. 2007).

Here, as a Debtor In Possession, the Debtor acts as a fiduciary for all of its creditors, and all of the assets of the Debtor have been entrusted to the Debtor, under the stewardship of B. Sapra, as President of the Debtor. However, as set forth fully in the 7056-1 Statement, it appears that B. Sapra has breached his fiduciary duty to the Debtor and its creditors by misappropriating substantial funds that were legally property of the Debtor.

Had the Debtor been fulfilling its responsibilities as a chapter 11 debtor, this potential misappropriation of funds could be investigated through a review of the Debtor's Monthly Operating Reports filed with the Court and with the Office of the United States Trustee. However, despite it's clear obligation to do so, the Debtor has failed to file even one Monthly Operating Report in this case, and as such, has managed to keep its creditors and this Court in the dark regarding its financial circumstances.

At the Section 341(a) meeting of creditors in this case, Sanchez requested that Sapra provide him with an accounting of all of the monies, cash or otherwise, that have been collected by or on behalf of the Debtor, by B. Sapra or any other party, since the Filing Date, but none has ever been provided.

By virtue of the foregoing, as there is no adequate remedy at law, it is respectfully submitted that the Plaintiff is entitled to an accounting from B. Sapra and the Debtor of all of the monies, cash or otherwise, that have been collected by or on behalf of the Debtor, by B. Sapra or any other party, since the Filing Date.

**IV.    THE COURT SHOULD DISMISS THE DEFENDANTS' AFFIRMATIVE DEFENSES**

The Answer filed by the Defendants sets forth two affirmative defenses, neither of which are meritorious.  The Defendants' First Affirmative Defense is that "the Complaint, and each purported cause of action alleged therein, fails to state facts sufficient to constitute a cause of action against which relief should be granted.

As has been fully set forth in the previous sections of this Memorandum, the Plaintiff has: (a) properly set forth facts demonstrating the existence of all the elements of reformation by showing that the errors contained in the Inaccurate Documents were made by the mutual mistake of the parties; and (b) properly set forth facts demonstrating the existence of all the elements for an accounting by showing the Debtor's and B. Sapra's fiduciary responsibilities to Sanchez as a creditor of the Debtor and alleging no adequate remedy at law.  As such, the Defendants' First Affirmative Defense must fail.

The Defendants' Second Affirmative Defense is that "the Plaintiff is barred and precluded from obtaining any of the relief requested in the complaint, in whole or in part, by virtue of the application of the doctrines of waiver, estoppel and acquiescence.

It is well settled that ""[a] waiver is 'the intentional relinquishment of a known right with both knowledge of its existence and an intention to relinquish it'" ( Werking v Amity Estates, 2 NY2d 43, 52, citing Whitney, Contracts [4th ed, 1946], p 273)." City of New York v. State of New York, 40 N.Y.2d 659, 669, 357 N.E.2d 988, 389 N.Y.S.2d 332 (N.Y. Ct. of Appeals 1976). See also  Silverman v. Silverman, 304 A.D.2d 41, 46, 756 N.Y.S.2d 14 (N.Y.A.D. 1st Dept. 2003); Ulster Savings Bank v. Kizelnik (In re Kizelnik), 190 B.R. 171, 180 (Bankr. S.D.N.Y. 1995).

15

Clearly the Plaintiff did not waive his rights to his security interest, as he was unaware of the errors contained in the Inaccurate Documents until being served with the Debtor's Prior Motion, at which time he immediately made his position known to the Defendants and this Court at the hearing on the Debtor's Prior Motion. As there was no intentional relinquishment of any right, waiver is inapplicable as an affirmative defense.

As set forth above, "the doctrine of equitable estoppel may successfully be invoked, in the interest of fairness, to prevent the enforcement of rights which would ultimately work fraud or injustice upon the person against whom enforcement is sought (see, Nassau Trust Co. v Montrose Concrete Prods. Corp., 56 NY2d 175, 184). An estoppel defense may also be invoked where the failure to promptly assert a right has given rise to circumstances rendering it inequitable to permit the exercise of the right after a lapse of time (see, 57 NY Jur 2d, Estoppel, Ratification, and Waiver, §§ 27)." Ettore I. V. Angela D., 127 A.D.2d 6, 12, 513 N.Y.S.2d 733 (N.Y.A.D. 2nd Dept. 1987).

Moreover, "[a] creature of equity, estoppel is based upon the grounds of public policy, fair dealing, good faith, and justice and its application must depend upon the facts and circumstances peculiar to each case. 28 Am Jur.2d Estoppel & Waiver §§ 28 (1966)." Ulster Savings Bank v. Kizelnik (In re Kizelnik), 190 B.R. 171, 180 (Bankr. S.D.N.Y. 1995).

In this instant action, the doctrine of equitable estoppel acts in favor of the Plaintiff, not the Defendants. To estop Sanchez from asserting his security interest in the Debtor and its assets would not cause injury to the Debtor, it would result in a windfall! Clearly, as set forth above, it is the Defendants that must be estopped from disputing Sanchez's security interest in order to prevent injury and injustice. Therefore, equitable estoppel is inapplicable as an affirmative defense.

Finally, "[t]he doctrine of acquiescence is well recognized in the law as an admission by the party. But to have that effect, it must exhibit some act of the mind and amount to voluntary demeanor or conduct of the party, and whether it is acquiescence in the conduct or language of others, it must plainly appear that such conduct was fully known or the language fully understood by the party, before any inference can be drawn from his passiveness or silence." O'Donnell v. Kelsey, 10 N.Y. 412, 419 (N.Y. Ct. of Appeals 1852).

As the doctrine of acquiescence has developed, it has been employed almost exclusively with regard to land and water rights. See, e.g., Muraca v. Meyerowitz, 13 Misc. 3d 348, 353, 818 N.Y.S.2d 450 (N.Y. Sup. 2006). However, like waiver, it requires <u>voluntary</u> conduct or language, which was clearly not the case here, as Sanchez immediately asserted his rights upon learning of the errors in the Inaccurate Documents. Therefore, acquiescence is inapplicable as an affirmative defense.

**CONCLUSION**

By virtue of the foregoing, it is respectfully submitted that applicable law provides that the Inaccurate Documents should be reformed as follows:

- the $900K Promissory Note should be reformed in that the "payee" should be changed from Buhre to William Sanchez;

- the 2013 Security Agreement should be reformed in that the "secured party" should be changed from Buhre to William Sanchez;

- section 1.01 of the 2013 Security Agreement should be reformed in that the collateral description set forth therein should be modified to read:

A certain distributorship agreement by and between Pepsi-Cola Bottling Company of New York, Inc., Buhre Beverage Dist., Inc. and William Sanchez, and all of the sales proceeds, and other assets associated with the

performance of the distributor agreement including a 2004 International Harvester truck bearing VIN 1HTMMAAN74H607626, a 2005 Kenilworth van VIN 2NKMLZ9X95M100779, miscellaneous hand trucks and computer records related to the distributorship, and the shares of Buhre Beverage Dist., Inc. conveyed by a security agreement dated July 31, 2013

- section 8 of the UCC-3 Amendment should be reformed in that the collateral description set forth therein should be modified to read:

A certain distributorship agreement by and between Pepsi-Cola Bottling Company of New York, Inc., Buhre Beverage Dist., Inc. and William Sanchez, and all of the sales proceeds, and other assets associated with the performance of the distributor agreement including a 2004 International Harvester truck bearing VIN 1HTMMAAN74H607626, a 2005 Kenilworth van VIN 2NKMLZ9X95M100779, miscellaneous hand trucks and computer records related to the distributorship, and the shares of Buhre Beverage Dist., Inc. conveyed by a security agreement dated July 31, 2013

- the Inaccurate Documents should be reformed to include a Stock Power evidencing the transfer by Sanchez to Bruckner of ninety-nine (99) shares of stock in Buhre on July 31, 2013.

By virtue of the foregoing, it is respectfully submitted that applicable law provides that the Plaintiff is entitled to a full accounting of all of the monies, cash or otherwise, that have been collected by or on behalf of the Debtor, by B. Sapra or any other party, since the Filing Date.

18

**WHEREFORE,** the Plaintiff respectfully demands summary judgment granting the relief sought in the first and third claims for relief in the Plaintiff's Complaint herein in its entirety, together with such other, further and different relief as this Court deems just and proper.

Dated: Melville, New York
September 5, 2014

LAW OFFICE OF MICHAEL G. MC AULIFFE
Counsel to the Plaintiff William Sanchez

By _____*/s/ Michael G. Mc Auliffe*_____
Michael G. Mc Auliffe, Esq.
68 South Service Road, Suite 100
Melville, New York 11747
(631) 465-0044