UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
WHITE PLAINS
------------------------------------------------------------------X
In re:

BUHRE BEVERAGE DISTRIBUTION, INC.,

                                 Debtor.
------------------------------------------------------------------X

WILLIAM SANCHEZ,

                                 Plaintiff,

    -against-

BUHRE BEVERAGE DISTRIBUTION, INC.,
BHAVEEN SAPRA, BRUCKNER BEVERAGE, INC.
and PEPSI-COLA BOTTLING COMPANY OF NEW
YORK, INC.,

                                 Defendants.
------------------------------------------------------------------X

Chapter 11

Case No. 14-22048-rdd

Adv. Pro. No.: 14-08218-rdd

**REPLY AFFIRMATION OF WILLIAM SANCHEZ IN FURTHER SUPPORT OF HIS
MOTION SEEKING SUMMARY JUDGMENT ON THE CLAIMS
FOR RELIEF IN THE COMPLAINT AGAINST THE DEFENDANTS BUHRE
BEVERAGE DISTRIBUTION, INC., BHAVEEN SAPRA AND
<u>BRUCKNER BEVERAGE, INC.</u>**

WILLIAM SANCHEZ ("Sanchez"), by and through his counsel, the Law Office of

Michael G. Mc Auliffe, hereby submits this Reply Affirmation in further support of the Sanchez'

Motion (the "Plaintiff's SJ Motion[1]") seeking Summary Judgment on the claims for relief in

Plaintiff's complaint in this adversary proceeding against BUHRE BEVERAGE

---

[1] Capitalized terms used in this Reply Affirmation, unless specifically defined herein, shall have the same definitions given for them in the Plaintiff's 7056-1 Statement.

1

DISTRIBUTION, INC. (alternatively, "Buhre" and the "Debtor"), BHAVEEN SAPRA ("B. Sapra"), and BRUCKNER BEVERAGE, INC. ("Bruckner") (collectively, the "Defendants"), and respectfully sets forth as follows:

1.  The Defendants have submitted opposition to the Plaintiff's SJ Motion dated October 29, 2014 (the "Disingenuous Opposition") wherein the Defendants assert that the relief requested in the Plaintiff's SJ Motion should be denied. It is respectfully submitted that, as will be reviewed in detail below, the Disingenuous Opposition is spurious at best, and does not serve to raise any legitimate opposition to the relief requested in the Plaintiff's SJ Motion[2].

2.  The Plaintiff's SJ Motion seeks the reformation of the Inaccurate Documents to conform with the true intent of the parties. As reviewed in detail in the Plaintiff's SJ motion, New York Law provides that reformation may be granted: where there has been (1) a mutual mistake, or (2) unilateral mistake coupled with fraudulent concealment by the knowing party.

---

[2] It should be noted that despite the fact that the Plaintiff's SJ Motion was filed almost two months ago on September 5, 2014, the Disingenuous Opposition was not filed until October 29, 2014, only five days prior to the November 3, 2014 return date of the Plaintiff's SJ Motion. Local Bankruptcy Rule 9006-1(b) provides:

> Except as otherwise ordered by the Court, or required by the Bankruptcy Rules, all other motion papers shall be served at least fourteen (14) days before the return date. Where service is made at least fourteen (14) days before the return date, any answering papers **shall** be served so as to ensure actual receipt not later than seven (7) days before the return date, unless the Court orders otherwise. (emphasis added)

Here, where the motion papers were served almost two months before the return date, any opposition papers were required to be filed by October 27, 2014, *at the latest*. It is respectfully submitted that as the Disingenuous Opposition was filed on October 29, 2014 in derogation of Local Rule 9006-1(b), said Opposition should not be considered by this Court.

See American Home Assurance Company v. Merck & Co, Inc., 329 F. Supp. 2d 436, 444 (S.D.N.Y. 2004). See also U.S. Bank National Association v. Lieberman, 98 A.D.3d 422, 423-424, 950 N.Y.S.2d 127 (N.Y.A.D. 1st Dept. 2012). In order to be successful, a proponent of reformation must show the mistake or fraud, together with what was actually agreed upon between the parties. See Chimart Associates v. Paul, 66 N.Y.2d 570, 573, 489 N.E.2d 231, 498 N.Y.S.2d 344 (NY Ct. of Appeals 1986). Here, the Plaintiff has successfully evidenced the mutual mistake of the parties regarding the Inaccurate Documents, together with the parties' true intent and as such, is entitled to reformation. It is respectfully submitted that the Disingenuous Opposition does not serve as an impediment to the reformation requested in the Complaint.

3. The Disingenuous Opposition repeatedly admits that there was a mutual mistake by the parties in the drafting of the Inaccurate Documents, and as such, the first requirement for reformation has been satisfied. See the Defendants' 7056-1 Statement at paragraph 27. See also the Sapra Affirmation at paragraph 27; the Defendants' Memorandum of Law at page 5.

4. With regard to the terms that were actually agreed to between the parties, the Disingenuous Opposition readily admits that the Inaccurate Documents were supposed to have listed Sanchez as the proper secured party and the proper payee under the Notes as asserted by the Plaintiff. See the Defendants' 7056-1 Statement at paragraphs 27, 31, 33. See also the Sapra Affirmation at paragraph 26.

5. However, after admitting the mutual mistake of the parties as to the Inaccurate Documents, and after admitting that most of the errors contained in the Inaccurate Documents should be amended in the manner requested by the Plaintiff, the Disingenuous Opposition goes on to make the wholly preposterous and nonsensical assertion that the Buhre Pepsi Route was not

intended to be part of the security for the $978,000.00 in promissory notes. The Disingenuous Opposition instead makes the absurd assertion that the parties agreed that the only collateral that the Defendants were giving to the Plaintiff to secure the almost One Million Dollars due on the two notes were two (2) used trucks and some nominal amount of cash with an approximate value of $56,300.00.

6. As set forth in the accompanying Affidavit of William Sanchez (the "Sanchez Supplemental Affidavit", a copy of which is annexed hereto at Exhibit "A"), the first of the two trucks owned by Bhure that were part of the sale of Buhre to the Defendants was a 2004 International Harvester truck. In order to evidence the current fair market value of this truck, the Plaintiff has obtained a listing of International Harverster trucks that are currently for sale, a copy of which is annexed hereto at Exhibit "B". The listing contains a 2004 International Harverster truck comparable to the one owned by Buhre, which is being sold for the sum of $14.500.00. By virtue of the foregoing, the Plaintiff believes that Buhre's 2004 International Harvester truck has an approximate value of $14,500.00.

7. The second of the two trucks owned by Bhure that were part of the sale of Buhre to the Defendants was a 2005 Kenworth truck. In order to evidence the current fair market value of this truck, the Plaintiff has obtained a listing of Kenworth trucks that are currently for sale, a copy of which is annexed hereto at Exhibit "C". While the listing does not contain a 2005 truck, it does contain two 2006 Kenworth trucks, which are being sold for $41,800.00 and $40,800.00 respectively. By virtue of the foregoing, the Plaintiff believes that the value of Buhre's 2005 Kenworth truck is somewhat less than the 2006 models, but for the purposes of this argument, will ascribe a value of $41,800.00 to the 2005 Kenworth truck.

4

8. Thus, the two trucks have a combined fair market value of $56,300.00, which is wholly insignificant compared to the almost One Million Dollars in debt the Defendants incredibly assert that the trucks were intended to secure.

9. Additionally, as further set forth in the Sanchez Supplemental Affidavit, when routes such as the Buhre Pepsi Route are sold, a security interest is **ALWAYS** held in the route, in addition to the trucks and other tangible assets. Sanchez is able to make this representation as he has been in the business of owning and operating soda distribution routes for decades. In fact, in 2012, Sanchez sold two (2) other Pepsi distribution routes in the Upper West Side of Manhattan that were owned by Buhre. During this prior sale, Sanchez received a security interest in the routes through such time that the notes payable to him were paid in full.

10. Moreover, in this industry, the route sales price is determined by the number of cases sold in a given calendar year, not the value of the equipment. There is often very little value in the trucks relative to the cost of purchasing the route, and usually the trucks are simply included as part of the sales price for the route, with no special value ascribed to them.

11. After making the fallacious assertion that the Buhre Pepsi Route was not intended to be part of the collateral (which assertion has been proven false herein), the Disingenuous Opposition makes the self-serving claim that discovery must be conducted to determine whether the parties intended the Buhre Pepsi Route to be part of the collateral securing the Defendants' obligation to Sanchez. However, the assertion that the Buhre Pepsi Route was not intended to be part of the collateral securing the obligation to Sanchez is so far from credible and so nonsensical that it is respectfully submitted that no discovery is necessary and the Court can determine that the true intent of the parties was that the Buhre Pepsi Route was meant to be part

of the collateral securing the Defendants' obligation to Sanchez.

12. By virtue of all of the foregoing, it is respectfully submitted that the assertion in the Disingenuous Opposition that the Buhre Pepsi Route was not intended to be part of the security for the obligation to Sanchez should be wholly and completely discredited, and the Inaccurate Documents should be reformed in the manner proposed by the Plaintiff.

**WHEREFORE**, Sanchez respectfully requests that the relief requested in the Plaintiff's SJ Motion be granted, and granting Sanchez such other and further relief as the Court deems to be just and proper under the circumstances.

Dated: Melville, New York
October 31, 2014

Law Office of Michael G. Mc Auliffe, Esq.
Counsel to William Sanchez

By: _/s/ Michael G. Mc Auliffe_
Michael G. Mc Auliffe, Esq.
68 South Service Road, Suite 100
Melville, New York 11747
(631) 465-0044