EXHIBIT "A"

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
WHITE PLAINS
------------------------------------------------------------X
In re:

BUHRE BEVERAGE DISTRIBUTION, INC.,

                     Debtor.
------------------------------------------------------------X
WILLIAM SANCHEZ,

                     Plaintiff,

   -against-

BUHRE BEVERAGE DISTRIBUTION, INC.,
BHAVEEN SAPRA, BRUCKNER BEVERAGE, INC.
and PEPSI-COLA BOTTLING COMPANY OF NEW
YORK, INC.,

                     Defendants.
------------------------------------------------------------X

Chapter 11

Case No. 14-22048-rdd

Adv. Pro. No.: 14-08218-rdd

**AFFIDAVIT**

STATE OF NEW YORK  )
                           )ss
COUNTY OF SUFFOLK  )

    WILLIAM SANCHEZ, being duly sworn, deposes and says:

    1.    I make this affidavit in further support of my Motion seeking the entry of an order: (a) pursuant to Federal Rule of Bankruptcy Procedure ( FRBP ) 7056 and Federal Rule of Civil Procedure ( FRCP ) 56 granting summary judgment against BUHRE BEVERAGE DISTRIBUTION, INC. (alternatively, Buhre and the Debtor ), BHAVEEN SAPRA ( B.

1

Spara ), and BRUCKNER BEVERAGE, INC. ( Bruckner ) (collectively, the Defendants )[1], the Defendants herein, on the first and third claims for relief in my complaint in this adversary proceeding; and (b); granting me such other, and further relief as the Court deems to be just and proper under the circumstances.

1. The Defendants have submitted opposition to the Plaintiff s SJ Motion dated October 29, 2014 (the Disingenuous Opposition ) wherein the Defendants assert that the relief requested in the Plaintiff s SJ Motion should be denied. It is respectfully submitted that, as will be reviewed in detail below, the Disingenuous Opposition is spurious at best, and does not serve to raise any legitimate opposition to the relief requested in the Plaintiff s SJ Motion.

2. The Plaintiff s SJ Motion seeks the reformation of the Inaccurate Documents to bring them in line with the true intent of the parties. In order to be successful, a proponent of reformation must show the mistake or fraud, together with what was really agreed upon between the parties. Here, I have successfully evidenced the mutual mistake of the parties regarding the Inaccurate Documents, together with the parties true intent and as such, am entitled to reformation. It is respectfully submitted that the Disingenuous Opposition does not serve as an impediment to the reformation requested in the Complaint.

3. The Disingenuous Opposition repeatedly admits that there was a mutual mistake by the parties in the drafting of the Inaccurate Documents, and as such, the first requirement for reformation has been satisfied. See the Defendants 7056-1 Statement at paragraph 27. See also,

---

[1] PEPSI-COLA BOTTLING COMPANY OF NEW YORK, INC. ( Pepsi ) was originally a defendant in this adversary proceeding, but the adversary proceeding was dismissed as against Pepsi, with prejudice, pursuant to a Stipulation between myself and Pepsi which was so ordered by this Court on July 24, 2014.

2

the Sapra Affirmation at paragraph 27; the Memorandum of Law at page 5.

4. With regard to the terms that were really agreed to between the parties, the Disingenuous Opposition readily admits that the Inaccurate Documents were supposed to have listed me as the proper secured party and the proper payee under the Notes as asserted by the Plaintiff. See the Defendants 7056-1 Statement at paragraphs 27, 31, 33. See also, the Sapra Affirmation at paragraph 26.

5. However, after admitting the mutual mistake of the parties as to the Inaccurate Documents, and after admitting that most of the errors contained in the Inaccurate Documents should be amended in the manner requested by the Plaintiff, the Disingenuous Opposition goes on to make the wholly preposterous and nonsensical assertion that the Buhre Pepsi Route was not intended to be part of the security for the $978,000.00 in promissory notes. The Disingenuous Opposition instead makes the absurd assertion that the parties agreed that the only collateral that the Defendants were giving to the Plaintiff to secure the almost one million dollars due on the two notes were two trucks and some nominal amount of cash with an approximate value of $56,300.00.

6. The first of the two trucks owned by Buhre that were part of the sale of Buhre to the Defendants was a 2004 International Harvester truck. In order to evidence the current fair market value of this truck, I have obtained a listing of International Harverster trucks that are currently for sale, a copy of which is annexed to the Reply Affirmation at Exhibit B . The listing contains a 2004 International Harverster truck like the one owned by Buhre, which is being sold for the sum of $14.500.00. By virtue of the foregoing, I believe that Buhre s 2004 International Harvester truck has an approximate value of $14,500.00.

3

7. The second of the two trucks owned by Buhre that were part of the sale of Buhre to the Defendants was a 2005 Kenworth truck. In order to evidence the current fair market value of this truck, I have obtained a listing of Kenworth trucks that are currently for sale, a copy of which is annexed to the Reply Affirmation at Exhibit C . While the listing does not contain a 2005 truck, it does contain two 2006 Kenworth trucks, which are being sold for $41,800.00 and $40,800.00 respectively. By virtue of the foregoing, I believe that the value of Buhre s 2005 Kenworth truck is somewhat less than the 2006 models, but for the purposes of this argument, will ascribe a value of $41,800.00 to the 2005 Kenworth truck.

8. Thus, the two trucks have a combined fair market value of $56,300.00, which is wholly insignificant compared to the almost one million dollars in debt the Defendants incredibly assert that the trucks alone were intended to secure.

9. Additionally, when routes such as the Buhre Pepsi Route are sold, a security interest is **ALWAYS** held in the route, in addition to the trucks and other tangible assets. I am able to make this representation as I have been in the business of owning and operating soda distribution routes for almost two decades. In fact, in 2012, I sold two other Pepsi distribution routes in the Upper West Side of Manhattan that were owned by Buhre. During this prior sale, I received a security interest in the routes through such time that the notes payable to me were paid in full.

10. Moreover, in this industry, the route sales price is determined by the number of cases sold in a given calendar year, not the value of the equipment. There is often very little value in the trucks relative to the cost of purchasing the route, and usually the trucks are simply included as part of the sales price for the route, with no special value ascribed to them.

11. After making the fallacious assertion that the Buhre Pepsi Route was not intended to be part of the collateral (which assertion has been proven false herein), the Disingenuous Opposition makes the self-serving claim that there needs to be discovery conducted to determine whether the parties intended the Buhre Pepsi Route to be part of the collateral securing the Defendants obligation to me. However, the assertion that the Buhre Pepsi Route was not intended to be part of the collateral securing the obligation to me is so far from credible and so blatantly untrue that it is respectfully submitted that no discovery is necessary and the Court can take judicial notice that the true intent of the parties was that the Buhre Pepsi Route was meant to be part of the collateral securing the Defendants obligation to Sanchez.

12. By virtue of all of the foregoing, it is respectfully submitted that the assertion in the Disingenuous Opposition that the Buhre Pepsi Route was not intended to be part of the security for the obligation to me should be wholly and completely discredited, and the Inaccurate Documents should be reformed in the manner proposed by the Plaintiff.

_____
WILLIAM SANCHEZ

Sworn to before me this
31 day of October, 2014

_____
Notary Public

MICHAEL G. MC AULIFFE
Notary Public, State of New York
No. 02MC5062957
Qualified in Nassau County
Commission Expires July 15, 2018

5